**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | |
| ) | |
| **(1) DUSTIN J. DENUNZIO,** ) | |
| **(2) ANTHONY GATTINERI, and** ) | **Criminal No: 14-CR-10284-NMG** |
| **(3) CHARLES A. LIGHTBODY,** ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** ) | |
| ) | |

**REPLY TO GOVERNMENT'S OPPOSITION TO**
**DUSTIN DENUNZIO'S AND ANTHONY GATTINERI'S MOTION TO SEVER**

This is not an organized crime case. Defendants are not charged with illegally running or participating in a casino. They are not charged with unlawfully seeking to obtain for themselves a license to operate a casino. And they are not charged with any other illicit, racketeering activity. Rather, Defendants are charged with conspiring to defraud billionaire businessman Steve Wynn and his company Wynn Resorts Limited LLC ("Wynn") in a local real estate deal.

Wynn's presence as the putative "victim" provides this case with a casino backdrop, but the **relevant facts** are entirely unrelated to organized crime. The Government's inflammatory claims regarding Charles Lightbody's mafia "associations," that an imprisoned "made member" of the mafia was one of Defendants' co-conspirators, and Mr. DeNunzio's investment in the King Arthur's strip club are designed solely and improperly to create a mirage that Mr. DeNunzio and Mr. Gattineri — legitimate real estate investors whose liberty and hard-earned reputations are at stake, but whose surnames unfortunately happen to end in vowels — are wise guys who must have engaged in illicit activities. Those spurious allegations have absolutely no

1

place in this case, and allowing them to be presented to the jury would destroy Defendants' fair trial rights.

Mr. DeNunzio's and Mr. Gattineri's severance motion should be granted, and the Court in addition should make clear that the Government will not be allowed to unconstitutionally prejudice Defendants with irrelevant and inflammatory claims regarding organized crime.[1]

## REPLY TO THE GOVERNMENT'S DESCRIPTION OF THE CASE

### I. The Undisputed Relevant Facts Have Nothing to Do With Organized Crime

The following facts are not in dispute and are core to this case: **First**, the 33-acre parcel of land on which Wynn desperately wanted to build a Boston-area resort casino (the "Everett Parcel") was owned by FBT Everett LLC ("FBT"). **Second**, from about January 2011 through mid-2012, Mr. DeNunzio, Mr. Gattineri, and Mr. Lightbody held equity interests in FBT of approximately 3%, 35%, and 12.5%, respectively. **Third**, in November 2012, Wynn entered into a written memorandum of understanding with FBT for the purchase of a 100% fee simple interest in the Everett Parcel, contingent on Wynn securing a license to operate a casino on the site. **Fourth**, on December 11, 2012, the Boston Business Journal published an article <u>incorrectly stating</u> that, for Wynn to be eligible to secure a license to operate a casino on the Everett Parcel, the Massachusetts Gaming Commission would need to find <u>FBT, which would have no involvement whatsoever in Wynn's casino operation</u>, as a "suitab[le] part[y] in interest to [Wynn's] gaming license." The article further implied (again, incorrectly) that FBT could not satisfy the Commonwealth's "suitability" test if any of its present equity owners had a prior criminal conviction. **Fifth**, by no later than December 14, 2012, FBT's attorney at Davis, Malm

---

[1] On April 15, Defendants sent a letter to the Government requesting production of any and all documents and objects that the Government possesses and intends to use to prove up any of these inflammatory allegations. That letter is attached as Appendix A.

& D'Agostine began drafting paperwork memorializing an agreement by Mr. Lightbody to relinquish his 12.5% interest in FBT to Mr. Gattineri, for a price of $1.7 million plus interest, an amount that Mr. Gattineri paid to Mr. Lightbody in full in June 2014.  **Sixth**, on December 17, 2012, Wynn and FBT entered into a written contract providing Wynn an option to purchase the Everett Parcel.  **Seventh**, on January 15, 2013, Wynn submitted its casino license application to the Massachusetts Gaming Commission.   **Eighth**, on January 17, 2013, Wynn's general counsel asked Mr. DeNunzio to provide Wynn the names of FBT's present equity owners.  Mr. DeNunzio responded in writing that the present equity owners were himself, Mr. Gattineri, and a successful real estate developer named Paul Lohnes.[2]  **Ninth**, on September 15, 2014, the Massachusetts Gaming Commission awarded Wynn a license to operate a casino on the Everett Parcel.  **Tenth**, on January 2, 2015, Wynn purchased the Everett Parcel from FBT for a net price of $25 million.

## II.     The Threshold Question for the Jury Has Nothing to Do With Organized Crime.

The threshold question for the jury in this case – the communication charged as an act of wire fraud – is whether Mr. DeNunzio's representation to Wynn's general counsel on January 17, 2013 that the present equity owners of FBT were himself, Mr. Gattineri, and Mr. Lohnes was factually false.  If the Government cannot prove beyond a reasonable doubt that the representation was factually false, it cannot secure convictions.  In other words, the threshold question for the jury is simply whether Mr. Lightbody's agreement to relinquish his equity stake in FBT was *bona fide*.

Despite the Government's assertion that Mr. Lightbody's supposed "association" with organized crime is "intrinsic" to the charged offenses, Mr. Lightbody's social reputation and the

---

[2] It is undisputed that Mr. Lohnes has always held at least 50% of FBT's equity.

nature of his past criminal convictions (none of which are mafia-related) are not relevant to any elements of the charged offenses and therefore cannot be introduced by the Government as part of its case-in-chief.  Indeed, the First Circuit has held that even where a defendant is charged with violating the federal felon-in-possession statute — an offense for which the defendant's criminal record is an <u>express element</u> that the prosecution must prove beyond a reasonable doubt — the prosecution is prohibited from "revealing [to the jury] the nature" of the defendant's prior conviction because of the substantial risk that such evidence will "add[] fuel to an already brewing fire" of prejudice.  *United States v. Tavares*, 21 F.3d 1, 2-6 (1st Cir. 1994) (reversing felon-in-possession conviction where the prosecution elicited "testimony concerning [the nature] of Tavares's prior felony").

## ARGUMENT

Sweeping aside the irrelevant, highly inflammatory insinuations regarding Mr. Lightbody's mafia affiliations, his friendship with a supposed "made member," and Mr. DeNunzio's investment in a Chelsea strip club, the Government's opposition brief merely confirms that its chief evidence that Mr. Lightbody did not, in fact, relinquish his equity interest in FBT is a series of out-of-court statements by Mr. Lightbody.[3]  Outside of those out-of-court statements, the Government has essentially conceded in its opposition brief that its case against Mr. DeNunzio and Mr. Gattineri rests upon weak circumstantial evidence for which there are straightforward, innocent explanations.

---

[3] Throughout its opposition brief, the Government speaks about Mr. Lightbody's "financial interest" in the Everett Parcel.  Despite the Government's embrace of that ambiguous and undefined concept, what the Government will be required to show at trial is that Mr. Lightbody continued to be an equity owner of FBT, thereby rendering the January 17, 2013 email from Mr. DeNunzio to Wynn false.

4

## I.     "Prisoner 1" Is Not an Unindicted Co-Conspirator.

The United States Attorney's Office investigated Defendants for nearly two years prior to indictment, and the prosecution team has had access to the several dozen tape recorded prison phone calls between Mr. Lightbody and "Prisoner 1" for nearly as long.  On October 30, 2014, nearly a month after the Indictment was issued, the Government provided Defendants with an automatic discovery letter stating that the Government is "unaware of the names of any known unindicted coconspirators . . . ."  That letter is attached hereto as Exhibit A.  The Government did not provide any suggestion that there were <u>any</u> unindicted co-conspirators.  Nor did it ever update its October 30, 2014 letter.

But, faced with Mr. DeNunzio's and Mr. Gattineri's severance motion, the Government now claims that "Prisoner 1" — an individual with whom Mr. Lightbody certainly had a personal friendship [4] — is an unindicted coconspirator who "stood to gain financially" from Mr. Lightbody's "criminal activities," apparently a reference to the fact that Mr. Lightbody sometimes contributed *de minimis* amounts to Prisoner 1's prison commissary account. The Government's sudden about-face is a transparent attempt to avoid the hearsay rules and to further insinuate that Mr. DeNunzio and Mr. Gattineri had entangled themselves with organized crime. The Government should be bound by its October 2014 position on unindicted co-conspirators.

In any event, the Government has no evidence to support its curiously timed assertion that Prisoner 1 was a member of the charged conspiracy to defraud Wynn.  Under the First Circuit's pattern jury instructions, to prove that an individual was a member of a charged conspiracy, the prosecution must prove that the individual "willfully joined the conspiracy," *i.e.*, manifested "an intent to agree and an intent . . . that the underlying crime be committed."  First

---

[4] The identity of "Prisoner 1" is known to the parties; his surname also ends in a vowel.

5

Circuit Pattern Instruction 4.18.371(1). An individual "does not thereby become a conspirator" simply because he "happens to act in a way that furthers some object or purpose of the conspiracy . . . ." *Id.* The fact that, during the dozens of hours they spent on the phone with one another, Mr. Lightbody and Prisoner 1 engaged in some isolated, momentary discussions about Steve Wynn and the highly-publicized competition for the single Eastern Massachusetts casino license that was up for grabs" does not remotely show that Prisoner 1 was a "co-conspirator." Before the Government can proceed with a claim that Prisoner 1 is a co-conspirator it must prove up its co-conspirator claims at a pre-trial *Petrozziello* hearing.

## II. Mr. Lightbody's Out-of-Court Statements to Prisoner 1 Were Not "In Furtherance" of the Charged Conspiracy.

The Government barely contests the fact that, if Mr. Lightbody's out-of-court statements are not admissible against Mr. DeNunzio and Mr. Gattineri, the substantial danger that the jury at a joint trial would hold Mr. Lightbody's out-of-court statements against Mr. DeNunzio and Mr. Gattineri could not be ameliorated with cautionary and limiting instructions. Accordingly, in opposing the severance motion, the Government essentially places all of its chips on the notion that Mr. Lightbody's statements to Prisoner 1 were "in furtherance" of the charged conspiracy.

The Government has made a poor bet. Even the case law upon which the Government relies recognizes that, to be admissible under Rule 801(d)(2)(E), "the statements [at issue] must somehow advance the objectives of the conspiracy, not merely inform the listener of the declarant's activities" and that an alleged conspirator's "[c]asual comments to people outside or inside the conspiracy do not meet the 'in furtherance' requirement." *United States v. Mayberry*, 896 F.2d 1117, 1120 (8th Cir. 1990). For example in *United States v. Snider*, 720 F.2d 985, 992 (8th Cir. 1983), the court held that "statements Yost made to Lawrence" were inadmissible because Yost's intent was merely "to impress" Lawrence "with his enterprise, rather than further

6

the conspiracy." *Id.* ("[N]othing in the record suggests that Yost's [statements] to Lawrence . . . in any way furthered the objectives of the conspiracy.").

At most, the isolated back-and-forth between Mr. Lightbody and Prisoner 1 regarding the Wynn real estate deal were the sort of "casual statements" that cannot be smuggled into evidence under Rule 801(d)(2)(E). Although the Government attempts to avoid this conclusion by proffering creative descriptions of the phone calls between Mr. Lightbody and Prisoner 1, Mr. DeNunzio and Mr. Gattineri respectfully submit that, if the Court simply listens to the available recordings as part of a pre-trial *Petrozziello* hearing, the Court will conclude that the statements the Government is seeking to admit at issue do not satisfy Federal Rule of Evidence 801(d)(2)(E). The statements the Government is seeking to admit were brief, isolated comments made during long-running conversations between two friends, and there is no plausible basis for the notion that Mr. Lightbody was seeking to recruit Prisoner 1 into the alleged conspiracy, seeking Prisoner 1's assistance in the alleged scheme to defraud Wynn, or otherwise trying to use Prisoner 1 to advance the goals of the alleged conspiracy. The Court will also see the inherent potential for grave unconstitutional prejudice if the phone calls are admitted at a joint trial of all three Defendants.

**III.    Mr. Lightbody's Reputation and Prior Criminal Convictions Are Not "Intrinsic" to the Charged Offenses and Cannot Be Admitted by the Government as Part of Its Case-in Chief.**

Mr. Lightbody's reputation and prior convictions are not elements of the charged offenses. The Government's theory of criminality appears to be that Defendants sought to "conceal" Mr. Lightbody's equity ownership in FBT because they were under the mistaken impression, thanks to an inaccurate *Boston Business Journal* article, that Wynn could not obtain a casino license, and therefore would not proceed to purchase the Everett Parcel from FBT, if any of FBT's equity owners had a prior felony conviction. To the extent that this theory

7

inherently places Mr. Lightbody's criminal record at issue, at most the Government would be entitled to proceed as though this is a felon-in-possession case — namely, the Government would be allowed to inform the jury of the <u>fact</u> that Mr. Lightbody previously was convicted of a felony but <u>would not</u> be allowed to inform the jury about <u>the nature</u> of Mr. Lightbody's prior convictions. *See Tavares*, 21 F.3d at 2-6. Under that well-established legal framework, the specifics of Mr. Lightbody's prior convictions would be admissible only if introduced by Mr. DeNunzio or Mr. Gattineri, under Federal Rule of Evidence 609, to impeach the credibility of Mr. Lightbody's out-of-court statements (assuming he does not testify in his own defense). The Government does not cite a single case, and the defense certainly is not aware of any, holding that the prosecution may properly admit in its case-in-chief evidence of a defendant's bad reputation and the specific details of his prior criminal convictions, particularly when neither of those things are formal elements of the charged offenses.

    The Government argues that Mr. DeNunzio and Mr. Gattineri do not have "standing" to advance this second ground for severance because introduction of Mr. Lightbody's prior crimes of dishonesty would unconstitutionally prejudice Mr. Lightbody, not Mr. DeNunzio and Mr. Gattineri. As indicated in the motion to sever, however, Mr. Lightbody specifically agreed that severance is necessary due to the incompatibility of his own trial fair rights with Mr. DeNunzio's and Mr. Gattineri's impeachment strategy. To the extent that Mr. Lightbody needs to more formally join this portion of the severance motion, Mr. DeNunzio and Mr. Lightbody have no reason to believe he will decline to do so.

## CONCLUSION

For the foregoing reasons, and the reasons stated in their opening brief, Mr. DeNunzio and Mr. Gattineri respectfully request that this Court grant their motion to sever. Mr. DeNunzio and Mr. Gattineri also respectfully request oral argument on their motion.

Respectfully submitted,

/s/ Aaron M. Katz
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Fax: (603) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com

*Attorneys for Dustin DeNunzio*


Michael J. Connolly (BBO #638611)
Laura B. Angelini  (BBO #658647)
Hinckley, Allen & Snyder LLP
Prudential Center
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnelly@hinckleyallen.com
langelini@hinckleyallen.com

*Attorneys for Anthony Gattineri*

Dated: April 24, 2015

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants have in good faith attempted to confer with counsel for the Government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ Joshua S. Levy
Joshua S. Levy

## CERTIFICATE OF SERVICE

I, Joshua S. Levy, hereby certify that, on April 24, 2015, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

/s/ Joshua S. Levy
Joshua S. Levy