### United States District Court
### District of Massachusetts

```
_____
                              )
UNITED STATES OF AMERICA,      )
                              )
         v.                    )
                              )     Criminal Action No.
DUSTIN J. DeNUNZIO and ANTHONY )     14-10284-NMG
GATTINERI,                     )
                              )
         Defendants.           )
_____)
```

### MEMORANDUM & ORDER

GORTON, J.

On October 1, 2014, the Grand Jury returned a two-count indictment charging defendants Dustin J. DeNunzio ("DeNunzio"), Anthony Gattineri ("Gattineri") and Charles A. Lightbody ("Lightbody") with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (Count I), and wire fraud, in violation of 18 U.S.C. § 1343 (Count II). The charges stem from defendants' alleged efforts fraudulently to conceal the equity ownership interest that Lightbody, a convicted felon with purported mafia connections, had in an entity that owned a 33-acre parcel of undeveloped commercial property in Everett, Massachusetts ("the Everett Parcel"). The defendants were in the process of selling that land to a prospective casino resort developer. The government contends that defendants hid Lightbody's interest both from 1) Wynn Resorts Limited LLC ("Wynn"), which entered

- 1 -

into a contract with FBT Everett Realty LLC ("FBT"), the entity
formed by defendants to hold the Everett Parcel, to retain the
option to purchase the land and 2) the Investigations and
Enforcement Bureau ("IEB") of the Massachusetts Gaming
Commission ("MGC") during its 2013 investigation into Wynn's
casino license application.

Currently before the Court is the motion of DeNunzio and
Gattineri to sever their cases from the case against defendant
Lightbody.  For the reasons that follow, the motion will be
denied.

## I.   Background

In October 2009, FBT purchased the Everett Parcel for
approximately $8 million.  At the time of the purchase,
Gattineri and Lightbody, along with Paul Lohnes ("Lohnes") and
Gary DeCicco ("DeCicco"), held equity ownership interests in
FBT.  In 2011, DeNunzio received a small ownership interest in
FBT and agreed to manage its daily operations.  By early 2012,
Gattineri, Lightbody and DeNunzio held financial interests in
FBT of 34%, 12% and 3%, respectively.[1]

In November 2011, the Massachusetts legislature enacted the
Massachusetts Expanded Gaming Act.  See 2011 Mass. Acts c. 194;
M.G.L. c. 23K.  The Act provides for up to three "Category 1"

---

[1] Lohnes held the remaining 51% interest and DeCicco had been
previously bought out; neither was charged in the Indictment.

destination resort casino licenses; one license covers "Region A" which encompasses the geographic area that includes Everett, Massachusetts. The MGC was given responsibility for evaluating applicants for the Category 1 licenses.  To help with that task, the IEB investigated the suitability of casino license applicants and all parties in interest.

It did not take long for FBT to begin pursuing various casino companies to gauge their interest in the Everett Parcel as a possible site for the Region A license.  By the Fall of 2012, FBT was involved in negotiations with Wynn about a potential option contract for the Everett Parcel.  The government asserts that throughout that time, Lightbody retained his interest in FBT, as evidenced by, inter alia, his inclusion on FBT partner emails and phone conversations he had with DeNunzio.

According to the government, however, in early December, 2012, defendants came to the realization that they needed to take affirmative steps to conceal Lightbody's ownership interest in the Everett Parcel.  On December 10, 2012, they learned that a reporter from the Boston Business Journal had contacted Wynn regarding the criminal history of DeCicco and questioned whether he still retained an interest in the Everett Parcel.  Supposedly then fearing that Lightbody's criminal history would be discovered, defendants purportedly entered into a conspiracy

fraudulently to conceal Lightbody's interest in the land.  The
government contends that defendants knew discovery of
Lightbody's criminal history would mean that Wynn would either
1) pass on the Everett Parcel as its choice for a casino
location or 2) be deemed unsuitable for a casino license and
fail to gain approval of the MGC.

On December 11, 2012, Lightbody purportedly spoke with an
unnamed inmate in the Massachusetts Department of Corrections
("Prisoner Doe"), who also reputedly had mafia connections,
about the need to conceal his interest in the Everett Parcel.
Lightbody detailed the Boston Business Journal's inquiry and
explained that a plan was being put in place to make it appear
as though he was being bought out.  Prisoner Doe advised
Lightbody to "double blind" or even "triple blind" his interest
in the land, to which Lightbody responded "[w]ell that's what
I'm doing."

The next day, DeNunzio allegedly lied to FBT's attorney and
1) reported that Gattineri had agreed to purchase Lightbody's
financial interest by delivery of a $1.7 million promissory note
and 2) requested that the attorney report to Wynn that Lightbody
no longer had an interest in FBT.  Both a Memorandum of Transfer
and a Promissory Note purporting to transfer Lightbody's
interest were prepared and dated December 14, 2012, but were not
executed at that time.  It was not until January 28, 2013, that

4

Lightbody and Gattineri executed the fraudulent documents that transferred Lightbody's ownership interest.[2]

Meanwhile, on December 19, 2012, Wynn entered into an option agreement with FBT with respect to the Everett Parcel. According to the Indictment, Wynn agreed to pay $100,000 per month for the right to purchase the Everett Parcel for $75 million in the event that Wynn was chosen for the Category 1 license in Region A.[3]  Shortly thereafter, on January 15, 2013, Wynn submitted its application for the Region A license which proposed the Everett Parcel as the site for the casino.

On January 17, 2013, prior to the execution of the buy-out documents, Wynn's general counsel sent an email to DeNunzio requesting the names of FBT's equity owners.  In response, DeNunzio represented that, as of that date, the only individuals with an equity interest in FBT were himself, Gattineri and Lohnes.

In July, 2013, the IEB began questioning defendants about the ownership of the Everett Parcel.  The government asserts that, in his first interview with the IEB on July 9, 2013, DeNunzio lied to investigators and reported that Lightbody had transferred his equity interest in the land during the Summer of

---

[2] Moreover, it was not until June, 2014 that Gattineri finally paid Lightbody in full for his equity stake in FBT.
[3] The purchase price was subsequently amended to $25 million.

2012.  Immediately after his initial interview, DeNunzio
allegedly backdated the buy-out documents to track his false
answer to the IEB.  On July 10, DeNunzio had both Lightbody and
Gattineri sign the amended Memorandum of Transfer and Promissory
Note with an effective date in the preceding summer.  The
government contends the backdating aimed to conceal further
defendants' scheme from investigators and was intended to assure
that Wynn would exercise its option to purchase the Everett
Parcel upon gaining approval of the Region A license.[4]

## II. Motion to Sever

### A.   Legal Standard

In considering a motion to sever pursuant to Fed. R. Crim.
P. 14, the general rule in the First Circuit Court of Appeals
"is that those indicted together are tried together to prevent
inconsistent verdicts and to conserve judicial and prosecutorial
resources." United States v. DeCologero, 530 F.3d 36, 52 (1st
Cir. 2008) (quoting United States v. Soto-Beniquez, 356 F.3d 1,
29 (1st Cir. 2004)).  To overcome the presumption in favor of a
joint trial, a defendant must demonstrate "prejudice so
pervasive that a miscarriage of justice looms." United States v.
Sotomayor-Vazquez, 249 F.3d 1, 17 (1st Cir. 2001); see also
United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)

---

[4] Wynn was awarded a casino license in September, 2014 and
eventually purchased the Everett Parcel in January, 2015.

("[W]hen multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice.").  Under this stringent standard, the requisite showing of prejudice "means more than just a better chance of acquittal at a separate trial." DeCologero, 530 F.3d at 52.

The preference for a joint trial is particularly strong in conspiracy cases. United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (rule operates with "special force" in conspiracy cases); United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994).  "Demonstrating unfair prejudice sufficient to require severance of coconspirators' trials is a difficult battle for a defendant to win." Floyd, 740 F.3d at 37 (citation and internal quotations omitted).  In fact, severance "will rarely, if ever, be required" in the context of a conspiracy case. Id. at 36 (quoting United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995)).

### B.  Application

In support of their motion, DeNunzio and Gattineri make two main arguments for severance.  First, DeNunzio and Gattineri contend that various statements made by Lightbody about his continued ownership interest in the Everett Parcel are not admissible against either of them and would unfairly and incurably cause them prejudice.  Second, they argue that their

7

need to impeach Lightbody to undermine the reliability of his
statements would trigger an irresolvable conflict with
Lightbody's own fundamental trial rights.

### 1.    Admissibility of Co-Defendant's Statements

DeNunzio and Gattineri aver that a number of out-of-court
statements made by Lightbody that are supposedly evidence of a
fraudulent buy-out of his ownership interest in FBT were not
made in furtherance of the conspiracy and, therefore, are
inadmissible against them.  Moreover, they contend that any
court-crafted limiting instructions will be inadequate to
prevent "catastrophic prejudice" against them.

Fed. R. Evid. 801(d)(2)(E) exempts a statement made by a
co-conspirator from the general rule against hearsay so long as
the statement was made "during and in furtherance of the
conspiracy."  The statement need not be made to another co-
conspirator:

> [t]he black-letter principle is that statements made in
> the course of a discussion between a coconspirator and
> a third party who is a stranger to the conspiracy are
> admissible under Rule 801(d)(2)(E), provided that they
> meet the Rule's foundational requirements.

United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002).

### i.    Conversations between Lightbody and Prisoner Doe

In addition to the December 11, 2012 phone conversation
between Lightbody and Prisoner Doe quoted in the Indictment, the

government describes a number of other conversations between the
two that involve discussions about, and advice in furtherance
of, the alleged conspiracy to conceal Lightbody's ownership
interest in FBT.  The government argues that those conversations
are admissible within the confines of Rule 801(d)(2)(E) because
Prisoner Doe is, in fact, an unindicted co-conspirator and the
statements by both Lightbody and Prisoner Doe were in
furtherance of the conspiracy.  Furthermore, the government
contends that Lightbody's statements are admissible against
DeNunzio and Gattineri even if Prisoner Doe is deemed not to be
a co-conspirator.

The Court need not decide at this time whether Prisoner Doe
was a co-conspirator because at trial, it can provisionally
admit his statements under Rule 801(d)(2)(E) and defer a final
ruling until the close of evidence. United States v.
Petroziello, 548 F.2d 20 (1st Cir. 1977); United States v.
Ciresi, 697 F.3d 19, 25 (1st Cir. 2012).  Even assuming Prisoner
Doe is found not to be a co-conspirator, his statements to
Lightbody would be admissible for the limited purpose of giving
context to Lightbody's own co-conspirator statements. United
States v. Mubayyid, 658 F.3d 35, 72 (1st Cir. 2011); United
States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006).  Thus, the
issue of whether Lightbody's conversations with Prisoner Doe are
admissible as co-conspirator statements turns solely on an

assessment of whether Lightbody's statements were made in furtherance of the conspiracy.

To establish that a co-conspirator's statement is in furtherance of the conspiracy is relatively easy.  A statement is considered "in furtherance" if it "tends to promote one or more objects of the conspiracy." Piper, 298 F.3d at 54.  The statement

> need not be necessary or even important to the
> conspiracy, or even made to a co-conspirator, as long as
> it can be said to advance the goals of the conspiracy in
> some way.

Id. (citations omitted) ("In other words, the connection need not be inexorable.").  On the other hand, statements qualifying as "mere idle chatter" or "narratives of past events" are not sufficient to be considered in furtherance of a conspiracy. Ciresi, 697 F.3d at 28 (citations omitted).

DeNunzio and Gattineri characterize the conversations between Lightbody and Prisoner Doe as "long-running conversations between two friends" that include brief "casual statements" about FBT's potential deal with Wynn.  They contend that the conversations cannot be construed as evidence that Lightbody was seeking assistance in, or otherwise furthering the goals of, the alleged conspiracy.

The Court disagrees.  In a telephone conversation on December 5, 2012, Prisoner Doe informs Lightbody of prior

regulatory problems that Wynn ran into in New Jersey based on
reputed organized crime connections and the parties discuss how
that might affect the possibility of a deal with FBT.  In the
December 11, 2012 conversation, after discussing the newspaper
reporter's questions surrounding DeCicco's criminal past,
Lightbody details the buy-out scheme.  Prisoner Doe advises
Lightbody to "move on" and encourages him to "double" and
"triple blind" his ownership interest in FBT, to which Lightbody
responds "[w]ell that's what I'm doing."  Finally, in a
February, 2013 conversation, Prisoner Doe describes the
environmental filing made by Wynn's competitor for the Region 1
license and then provides Lightbody with the contact information
to request a copy.  One week later, Lightbody reports that he
had "just sent it to my guys [be]cause they're sending it to
Wynn and his guys."

The Court will give the moving defendants the benefit of
the doubt and assume that Prisoner Doe is not a co-conspirator
for purposes of the instant motion.  Nevertheless, the several
conversations are not "mere idle chatter" that cannot be
construed as in furtherance of the alleged conspiracy.  Instead,
they appear to involve an exchange of advice and assistance
related to, and serve to benefit, the purported conspiracy. See,
e.g., United States v. Gupta, 747 F.3d 111, 125 (2d Cir. 2014)
(statements to non-conspirator "in furtherance" if designed in a

way that will assist conspiracy in accomplishing objectives);
United States v. Mayberry, 896 F.2d 1117, 1121-22 (8th Cir.
1990) (holding that both explanatory statements that serve to
inform others of the activities of a conspiracy and comments to
non-conspirators seeking assistance or cooperation satisfy the
"in furtherance" requirement).  In doing so, they

> tend[ed] to promote one or more objects of the conspiracy
> [and] advance[d] the goals of the conspiracy in some
> way.

Piper, 298 F.3d at 54.

Accordingly, the conversations are admissible against
DeNunzio and Gattineri under Fed. R. Evid. 801(d)(2)(E) and, as
such, do not serve as a basis to sever their trials from
Lightbody's.

### ii.  Other Statements Made by Lightbody

DeNunzio and Gattineri also cite statements made at about
the time of the alleged conspiracy to friends, family members
and a local bank, which they characterize as boasts and lies
made solely for personal benefit.  The government does not
contend that those additional statements qualify as co-
conspirator statements and therefore acknowledges that they are
inadmissible against DeNunzio and Gattineri.

The moving defendants contend that, in any event, the
introduction of those statements against Lightbody alone would
unfairly prejudice them and cannot be cured with an appropriate

12

limiting instruction.  They argue that such statements made by Lightbody are confessionary and that it would be impossible for a jury to consider the statements only in the case against Lightbody. See Bruton v. United States, 391 U.S. 123, 131 (1968).

As the First Circuit has explained, however, Bruton only prohibits the introduction of "powerfully incriminating" statements made by one co-defendant in a joint trial that are inadmissible as to others. United States v. Vega Molina, 407 F.3d 511, 520 (1st Cir. 2005); see also United States v. Sanchez-Berrios, 424 F.3d 65, 76 (1st Cir. 2005) ("We have answered this question, holding unequivocally that there is no Bruton problem when a statement falls within the coconspirator exception to the hearsay rule."). Statements are powerfully incriminating only when they are "inculpatory on [their] face." United States v. Rodriguez-Duran, 507 F.3d 749, 769 (1st Cir. 2007) (citations omitted).  Moreover,

> statements that are incriminating only when linked to other evidence ... do not trigger application of Bruton's preclusionary rule.

Id. (citations omitted).

As to the few other statements identified by the parties, none appears to inculpate DeNunzio and Gattineri explicitly nor can they be said to be "powerfully incriminating."  In fact, Lightbody's statements are only incriminating against DeNunzio

and Gattineri when linked to other evidence offered by the
government. See id. (exclusion under Bruton unwarranted where
defendants could "point only to prejudicial inferences the jury
[may] have drawn from the statement in light of other
evidence"). The Court will reserve ruling on the possibility of
redacting certain statements at trial if shown that they
explicitly implicate DeNunzio or Gattineri. United States v.
O'Brien, No. 12-cr-40026-FDS, 2014 WL 204493, at *6 (D. Mass.
Jan. 17, 2014). Moreover, the Court will give appropriate
limiting instructions to the jury with respect to any statements
by Lightbody that are inadmissible against his co-defendants.
Floyd, 740 F.3d at 37; Rodriguez-Duran, 507 F.3d at 770.

Ultimately, the introduction of certain contested
statements of Lightbody will not pervasively prejudice DeNunzio
and Gattineri so as to warrant severing their cases for trial.
Those statements are admissible against all three defendants
and, to the extent other statements are not, the Court will
proffer carefully crafted limiting instructions to prevent
prejudice.

### 2. Introduction of Co-Defendant's Prior Convictions

DeNunzio and Gattineri also suggest that severance is
warranted because, after introduction of any of his statements
against them, they will need to impeach Lightbody's character
for truthfulness. That will conflict with his "fundamental

14

trial right" to exclude evidence of any prior bad acts.  The government responds that defendants' argument is irrelevant because evidence of Lightbody's prior convictions is admissible against all three defendants.

The moving defendants have informed the Court that if certain statements made by Lightbody are admitted against them, DeNunzio and Gattineri plan to impeach Lightbody's character for truthfulness by introducing evidence of his "reputation for and extensive history of dishonesty", including his prior convictions for grand larceny and identity theft in 2007.

With respect to any statements admitted under Rule 801(d)(2)(E) as co-conspirator statements, DeNunzio and Gattineri would have the right to impeach Lightbody's credibility with evidence of prior criminal convictions. See Fed. R. Evid. 609(a)(2) (impeachment by evidence of a criminal conviction for crime involving a dishonest act "must be admitted").  Their right to impeach Lightbody with evidence of his prior convictions, however, does not interfere with Lightbody's reciprocal right to exclude evidence of his prior bad acts under Fed. R. Evid. 404(b).[5]

---

[5] For the sake of this argument, the Court ignores for the time being the issue of whether DeNunzio and Gattineri may assert trial rights on behalf of Lightbody, who did not join in the instant motion to sever.

First, as the government persuasively argues, evidence of
Lightbody's criminal convictions is inextricably intertwined
with the fraud scheme alleged in the Indictment.  The Indictment
alleges that defendants set out to conceal Lightbody's ownership
interest in the Everett Parcel specifically because Lightbody
had multiple prior convictions and connections with La Cosa
Nostra.  Defendants believed that such a stigma would ultimately
prevent them from selling the Everett Parcel as a prospective
casino location and thus allegedly embarked on a scheme to
pretend to buy-out Lightbody.  Thus, evidence relating to
Lightbody's criminal history is intrinsic to the alleged
conspiracy and admissible against each of the defendants. See,
e.g., United States v. Freeman, 434 F.3d 369, 374 (5th Cir.
2005) (evidence of acts other than those charged in an
indictment is intrinsic if "inextricably intertwined" or
"necessary preliminaries" to the charged offense); see also
United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005)
(intrinsic evidence not subject to Fed. R. Evid. 404(b)).

Moreover, even if evidence of Lightbody's prior convictions
was, in fact, considered extrinsic, it would be admissible under
Fed. R. Evid. 404(b)(2) for the limited purpose of establishing
the underlying motive for the alleged conspiracy to conceal
Lightbody's ownership interest from Wynn and the IEB.  That was
not the scenario in the case principally relied upon by DeNunzio

16

and Gattineri, in which the court allowed a motion to sever based, in part, on the fact that the prior convictions that one defendant intended to utilize to impeach a co-defendant's prior statement were otherwise wholly inadmissible with respect to the charged offense. See United States v. Perez, 299 F. Supp. 2d 38, 42-43 (D. Conn. 2004).

The Court may, at a later time, curtail the extent to which the government and DeNunzio and Gattineri can elicit specific details surrounding Lightbody's prior convictions. See United States v. Tavares, 21 F.3d 1, 5-6 (1st Cir. 1994); see also Fed. R. Evid. 403. For now, however, the mere fact that 1) the government may introduce the existence of Lightbody's prior convictions and 2) DeNunzio and Gattineri may impeach Lightbody with those prior convictions does not warrant severance of their cases.

### ORDER

In accordance with the foregoing, the motion to sever filed by defendants DeNunzio and Gattineri (Docket No. 71) is **DENIED**. **So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 12, 2015