UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 14-cr-10284-NMG |
| | ) | |
| v. | ) | |
| | ) | |
| (1) DUSTIN J. DENUNZIO, | ) | |
| (2) ANTHONY GATTINERI, and | ) | |
| (3) CHARLES A. LIGHTBODY | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL
DISCLOSURE OF EXCULPATORY EVIDENCE**

Without a shred of evidence, and despite having been warned that the "alleged incident" never happened, the defendants seized on a rumor spewed and spun by the City of Boston in a vicious civil lawsuit against the Massachusetts Gaming Commission (the MGC) and filed a *Brady* motion questioning the integrity of this criminal prosecution. Had the defendants simply asked Joseph F. Flaherty and Stephen G. Matthews about the rumors, they would have learned that Flaherty and Matthews did not review any files at the Massachusetts Attorney General's Office (the AGO) in 2013. In fact, they reviewed documents at the AGO in March *2014* in a matter completely unrelated to this case, and they never had access to investigative files or any other materials at the AGO related to this case.

Because there was no unauthorized access to files concerning the state or federal investigation of the defendants, the Court should deny the Motion. The government further notes that the only real effect of the defendants' frivolous Motion was to publically disclose grand jury transcripts produced pursuant to the Protective Order, which materials made their way to the City of Boston and the media within hours of the filing of the Motion.

1

### A. Applicable Law

The government is required to disclose any exculpatory evidence which is "material either to guilt or to punishment" under *Brady v. Maryland*, 373 U.S. 83 (1963). Information is material if there is a reasonable probability that, if disclosed, it can affect the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 104 (1976); *United States v. Rosario-Peralta*, 175 F.3d 48, 53 (1st Cir. 1999). "*Brady* did not create a general constitutional right to discovery in a criminal case." *United States v. DeCologero*, 530 F.3d 36, 64-65 (1st Cir. 2008) (internal quotations and citations omitted). Instead, when a defendant requests exculpatory evidence, he must make a "particularized and focused request." *United States v. Cartagena*, 593 F.3d 104, 114 (1st Cir. 2010) (citing *United States v. Caro-Muniz*, 406 F.3d 22, 30 (1st Cir. 2005)). Further, the defendants bear "the burden of making a 'prima facie showing of materiality.'" *United States v. Tsarnaev*, 2013 WL 6196279, at *4 (D. Mass. Nov. 27, 2013) (quoting *United States v. Bulger*, 928 F.Supp.2d 305, 324 (D. Mass. 2013)).

### B. Argument

#### 1. There Was No Unauthorized Disclosure Of Investigative Materials.

The defendants' entire argument is premised on "an alleged incident that occurred in 2013." Docket No. 168, at 1. The defendants allege that "members of the Massachusetts State Police and/or the Massachusetts Attorney General's Office provid[ed] two former members of the Massachusetts State Police, [Flaherty and Matthews], with unauthorized access to files concerning an ongoing joint state and federal investigation" of the defendants. *Id.* They further allege that the files "were maintained at a secure location within the [AGO] known as the 'wiretap room.'" *Id.* at 2.

To support these allegations of impropriety on the part of state investigators, the

defendants attached subpoenas issued in the matter of *City of Boston et al. v. Massachusetts Gaming Commission*, Civil Action Nos. 15-0012, 14-3253, 14-3805. Those subpoenas were issued to individuals working for the AGO and for the Massachusetts State Police, as well as to Flaherty and Matthews. The subpoenas *request* information about the "alleged incident"; they do not *provide* any information about the "alleged incident."

There is simply no evidence that the "alleged incident" actually happened. As set forth in their affidavits, attached as Exhibits 1 and 2, Matthews and Flaherty did not review any investigative files at the AGO in 2013. In fact, Matthews did not visit the AGO in 2013, and Flaherty did not visit the AGO in 2013 on any professional matter. Ex. 1, ¶ 4; Ex. 2, ¶ 5. While they did review documents at the AGO for a client on March 6 and 21, *2014*, those documents did not relate to casinos or gambling. Ex. 1, ¶ 5; Ex. 2, ¶ 6. Neither Matthews nor Flaherty has discussed the state or federal criminal investigation regarding the defendants with any representative of the AGO, and they have never reviewed any investigative files relating to the state or federal investigation leading to the pending indictments. Ex. 1, ¶ 8; Ex. 2, ¶ 9. Neither Matthews nor Flaherty had access to the "wiretap room" at the AGO in 2013. Ex. 1, ¶ 7; Ex. 2, ¶ 8.

Further, Matthews never worked for Mintz Levin or for Wynn. Ex. 1, ¶ 3. Flaherty has done investigative work for Mintz Levin on a number of clients, including Wynn. Between October 18, 2013 and November 13, 2013, he performed approximately 12.5 hours of work for Mintz Levin on behalf of Wynn. However, Flaherty did not perform any work for Wynn at the AGO. Ex. 2, ¶ 4. While irrelevant in light of Flaherty's sworn statement that he had no access to investigative materials at the AGO regarding the state or federal case, the government notes that the MGC's Investigations and Enforcement Bureau (the IEB) and Wynn learned of the defendants'

3

scheme to defraud Wynn by concealing Lightbody's interest in July 2013. Any evidence that Wynn knew about Lightbody's interest after July 30, 2013 is therefore immaterial to the defense – by then, the defendants had been caught red-handed.

Finally, before the defendants filed their Motion on July 8, 2015, Flaherty told Matthew Thompson, an associate of Thomas Butters, that the City of Boston's allegation that he reviewed criminal investigative files relating to Lightbody's hidden interest in land in Everett land at the AGO in 2013 was not true. Ex. 2, ¶ 10. Thompson and Butters both represent DeNunzio in the state criminal case, and both had previously filed appearances in this case on behalf of DeNunzio.

Despite having been told by Flaherty that the City of Boston's allegations were false, the defendants parroted the baseless allegations in *Brady* motions attacking the integrity of the investigation and prosecution of this case and of the state criminal case. *See* Docket No. 169, at 1. Indeed, without any actual evidence that a breach of protocol occurred – and without any regard for the truth – the defendants transformed questions asked by the City of Boston in its civil lawsuit into the "Relevant Facts" upon which the Motion is premised. *Id.* at 7.[1] Because there is simply no truth to the rumor and innuendo upon which the Motion is entirely premised, the Court should deny the Motion.

---

[1] The government disputes many of the "Relevant Facts" set forth in support of the Motion, including that the federal and state indictments against the defendants "were the culmination of a joint criminal investigation by the U.S. Attorney's Office, the [AGO] and the IEB of the Massachusetts Gaming Commission." *See* Docket No. 169 at 5. The defendants further imply that the IEB investigators to whom the defendants lied about the ownership of the Everett Parcel were working as part of a joint criminal investigative team in July 2013. In fact, the IEB investigators were working on the MGC suitability investigation of the Wynn application in July 2013, and did not know there was a federal criminal investigation until July 16, 2013 – after the IEB interviewed the defendants – when DeNunzio's lawyer told Lieutenant Kevin Condon of the IEB that the FBI had interviewed DeNunzio's employee on July 15, 2013.

## 2. The Defendants Have Not Met Their Burden Of Demonstrating That Wynn's Knowledge Of Lightbody's "Historical Ownership" Of The Everett Parcel Material.

In addition to requesting information about an "alleged incident" that never happened, the defendants purport to "have a strong basis to believe that the Government has produced some, but not all, exculpatory evidence in its possession regarding Wynn's knowledge of Lightbody's historical ownership interest" in the Everett Parcel. *See* Docket No. 169, at 7. This argument charitably falls into the "everything but the kitchen sink" category; a more cynical critic might suggest that it was posed merely to facilitate the public disclosure of grand jury materials produced pursuant to the Protective Order. Notably, those materials made their way into the record in the City of Boston's civil lawsuit within twenty-four hours, and were thereafter released to the media by the City's attorneys.

While difficult to ascertain from the pleadings, it appears the "strong basis" for the defendants' belief comes from the testimony of Stephen Tocco of ML Strategies that Everett Mayor Carlo DeMaria asked whether Lightbody was the individual with a criminal past that a reporter was asking about in December 2012. *See* Docket No. 169, at 9-10.[2] Because the defendants deny that Lightbody had an ownership interest in the Everett Parcel after December 2012, it is Lightbody's "historical ownership" of the property which they maintain Tocco learned about from DeMaria. However, Tocco's – or Wynn's – alleged knowledge of Lightbody's "historical interest" in the property cannot possibly be exculpatory or material to the defense.

---

[2] While the defendants also excerpted a transcript of an interview of DeMaria in their brief, DeMaria was describing conversations he had with ML Strategies representatives in the Fall of 2013 – when Lightbody was active in the Revere campaign against the Suffolk Downs casino – which was well after the IEB investigators told Wynn representatives about the defendants' scheme to defraud and Lightbody's hidden interest in the Everett Parcel.

In fact, it has never been the government's position that the defendants conspired to conceal from Wynn the fact that Lightbody was an owner of the Everett Parcel before December 2012. The government's position is that, in and after December 2012, the defendants arranged to remove Lightbody's name from FBT ownership documents and represented to FBT's attorneys and others that Lightbody was no longer an owner of the property, even though Lightbody retained a financial interest in the Everett Parcel. *See* Docket No. 3, ¶ 17.[3] Whether or not Stephen Tocco of ML Strategies or any other agent or representative of Wynn knew that Lightbody *had been an owner* of the parcel is therefore not exculpatory or otherwise material to any articulable defense theory.[4]

Regardless, while not yet required to do so, the government has produced to the defendants not only the IEB interviews of Tocco and Mayor Carlo DeMaria, but also all relevant grand jury transcripts. The government has exceeded its discovery obligations in this case, and the defendants have simply not met their burden of demonstrating that they are entitled to anything more.

---

[3] Indeed, it is this *continued* financial interest which would have been material to Wynn, as set forth in the excerpt of Stephen Tocco's IEB interview set forth in the defendants' own filings: "And I said, 'If there is anybody in that deal who has any kind of a criminal background, *I know Wynn, and they're not going forward*." *See* Docket No. 169, at 9 (emphasis added).

[4] Thus the testimony of DeNunzio's employee Michael Flood that DeNunzio told Wynn representatives "we have a partner who has a checkered past, but we're in the process of getting him out of the property," does not in any way suggest the government has failed to produce exculpatory evidence from the defense. *See* Docket No. 169, at 13-14.

**CONCLUSION**

For all of the foregoing reasons, the Court should deny the Motion.

                                                    Respectfully submitted

                                                    CARMEN M. ORTIZ
                                                    UNITED STATES ATTORNEY

Date:   July 22, 2015                     By:   */s/Kristina E. Barclay*
                                                         KRISTINA E. BARCLAY
                                                         Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: July 22, 2015                                      */s/Kristina E. Barclay*
                                                     Kristina E. Barclay
                                                     Assistant United States Attorney