## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **(1) DUSTIN J. DENUNZIO,** ) | **Criminal No:  14-CR-10284-NMG** |
| **(2) ANTHONY GATTINERI, and** ) | |
| **(3) CHARLES A. LIGHTBODY,** ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO STRIKE THE GOVERNMENT'S
## PROPOSED "ORGANIZED CRIME EXPERT"

The Government proposes to call as an "expert" witness Detective-Lieutenant Stephen Johnson of the Massachusetts State Police.  The testimony that the Government intends to elicit from Detective-Lieutenant Johnson clearly and obviously violates the Federal Rules of Evidence, First Circuit case law, and United States Supreme Court precedent.  Even more outrageous, Detective-Lieutenant Johnson's proffered testimony reflects a prosecution strategy — namely, seeking to prejudice Defendants with respect to real estate fraud charges by insinuating that they are actual or "wannabe" Mafiosos — that is wholly incompatible with both the fair trial guarantee that the Constitution provides every citizen and the Supreme Court's oft-repeated admonition that a prosecutor has a "special" obligation to "refrain from improper methods calculated to produce a wrongful conviction . . . ."  *Berger v. United States*, 295 U.S. 78, 88 (1935).

1

Detective-Lieutenant Johnson had no role whatsoever in the investigation of Defendants' alleged scheme to defraud Wynn Resorts Limited, and so he cannot testify as a percipient witness to any of the interactions that Defendants had with Wynn Resorts Limited, the Massachusetts Gaming Commission, or the Massachusetts Investigations and Enforcement Bureau.  Instead, according to the Government's highly generalized disclosure, Detective-Lieutenant Johnson intends to testify (1) about how "organized crime" works; (2) that based on "numerous" conversations he has had over the past 25 years with "crime family members," "cooperators," "confidential informants," and other unnamed individuals, a man named Darin Bufalino, who is not a defendant in this case and has never had any personal or business relationship whatsoever with Dustin DeNunzio or Anthony Gattineri, belongs to La Cosa Nostra ("LCN") and has committed many criminal acts "at the direction of LCN member Mark Rosetti" and leaders of the "Salemme crew"; and (3) that "individuals such as Charles Lightbody often make payments to or on behalf of LCN members."

The question for the Court is not whether Detective-Lieutenant Johnson is qualified to provide expert, "organized crime" testimony in *some* case.  It is whether Detective-Lieutenant Johnson's proffer is admissible in *this* case.  How is any of Detective-Lieutenant Johnson's proffered testimony relevant to the charge that Defendants schemed to defraud Wynn Resorts Limited in a commercial real estate deal?  The correct answer is, "It isn't."  The prosecutors, however, apparently intend to argue that every negative aspect of Charles Lightbody's background and reputation — and even the backgrounds and reputations of Charles Lightbody's friends — is information that must have been capable of influencing Wynn Resorts Limited's decision to enter into the December 19, 2012 option agreement with FBT Everett Realty LLC. Put another way, the prosecutors have concocted an unprecedented wire fraud theory that

assumes the relevance of such negative character evidence and then uses that assumption as the justification to call an "organized crime expert" to inflame the jury with stories about the LCN and to insinuate that Defendants, two of whom have obvious Italian surnames, are in some way connected to the unlawful, often violent activities of the mafia.  The prosecutors may be indifferent to the fact that any guilty verdicts secured through this legal reverse-engineering and thinly-veiled "guilt by association" tactic could not possibly survive an appeal.  This Court, however, should not be.

At best, the Government is engaged in a brazen attempt to evade five of the most sacrosanct Rules of Evidence, four of which are nondiscretionary: (1) the nondiscretionary requirement that evidence must be relevant in order to be admissible, (2) the nondiscretionary requirement that a witness testify solely from his own personal knowledge, (3) the nondiscretionary prohibitions against hearsay, (4) the nondiscretionary limitations on opinion testimony, and (5) the rule that a district court may preclude relevant evidence that presents an excessive danger of unfair prejudice.  At worst, the Government has made the purposeful decision to play to ethnic stereotypes and the jurors' most deep-seeded, base-level prejudices in order to overcome the gaping evidentiary holes in its wire fraud case — holes that have been made even more apparent by recently-disclosed sworn statements from Steve Wynn himself that will preclude the Government from proving the element of materiality.  Either way, Detective-Lieutenant Johnson's proffered testimony has no proper place in this case and should be stricken.

**RELEVANT BACKGROUND**

Detective-Lieutenant Johnson is widely known for his role in the investigation, arrest, and prosecution of James "Whitey" Bulger.  Detective-Lieutenant Johnson, however, had no role whatsoever in the investigation of Defendants' alleged scheme to defraud Wynn Resorts Limited

in a commercial real estate deal.  Furthermore, the Indictment in this case does not contain an organized crime charge, and there are no allegations in the Indictment that the supposed scheme to defraud Wynn was part of organized crime activity.

Nevertheless, the Government's Rule 16(a)(1)(G) disclosure, attached hereto as Exhibit A, describes Detective-Lieutenant Johnson's contemplated role at trial as follows:

> The government anticipates that Detective-Lieutenant Johnson will testify regarding certain aspects of the LCN enterprise, including the organizational structure and hierarchy of the New England LCN, as well as its various methods of crime.  The government further anticipates that Detective-Lieutenant Johnson will testify regarding Darin Bufalino's relationship to the LCN.  Specifically, Bufalino was at one time a member of LCN member [Frank] Salemme's "crew," and also operated at the direction of LCN member Mark Rossetti.

> The government further anticipates that Johnson will testify as to the relationships between LCN members and associates.  Specifically, individuals such as Charles Lightbody will often make payments to or on behalf of LCN members and associates for a variety of reasons, including protection, ingratiation, and tribute.

The Government's disclosure thus does not actually describe any actual "opinions," but rather indicates that Detective-Lieutenant Johnson will offer unspecified testimony on a general topic area (how organized crime works) and factual conclusions about non-defendant Bufalino's historical criminal conduct.

The Government's initial and ongoing Rule 16(a)(1)(E) disclosures — which, by rule, were required to include all documents and objects that might be "material to preparing the defense" — did not contain any materials that would have prepared the defense to respond to or test Detective-Lieutenant Johnson's proffered testimony.[1]  The Government's disclosure for

---

[1] Defendants have not received any discovery materials relating to Darin Bufalino's prior convictions, nor any materials relating to his relation to the "Salemme crew" or to Mark Rosetti. The Government has provided prison records showing that Mr. Lightbody placed $300 into Bufalino's prison commissary account on a few occasions in 2012, but there is no evidence any of that is related to the alleged scheme to defraud Wynn nor any reason to think this is relevant.

Detective-Lieutenant Johnson fails to mention that the Mr. DeNunzio and Mr. Gattineri have never met, spoken to, or corresponded with Darin Bufalino in their entire lives and had never even heard of him prior to the Government's investigation of this case. The disclosure also fails to provide any explanation of how Charles Lightbody's friendship with Darin Bufalino is at all relevant to any elements of the charged scheme to defraud Wynn Resorts Limited.[2]

## APPLICABLE LAW

The Government, as the proponent of the evidence, has the affirmative burden of proving the admissibility of Detective-Lieutenant Johnson's proffered "expert" testimony. Under Rule 702, the district court is required to "perform[ ] an important gatekeeping role" and to "screen[ ] proffered expert testimony for both reliability and relevance . . . ." *United States v. Stokes*, 388 F.3d 21, 26 (1st Cir. 2004). The district court is required to assess reliability and relevance "at the outset, pursuant to [Federal Rule of Evidence] 104(a) . . . ." *Bradley v. Sugarbaker*, 809 F.3d 8, 20 n.10 (1st Cir. 2015); *see also United States v. Garza*, 435 F.3d 73, 77 (1st Cir. 2006) (holding that Rule 104(a) requires the proponent to satisfy a "preponderance of the evidence" standard). Thus, an expert cannot be put before the jury unless the district court has made a prior judicial determination, pursuant to Rule 104(a), that the testimony is both reliable and relevant. A district court's "vigilant exercise of its gatekeeper role is critical" because of the weight that a

---

[2] It is also worth noting that when the Government made its initial Rule 16 disclosures after its extensive investigation, it did not identify Darin Bufalino (or anyone else, for that matter) as an unindicted co-conspirator. The Government only added Bufalino as an unindicted co-conspirator on April 27, 2015, nearly six months after the relevant disclosure deadline, presumably because it realized that doing so would bolster its position that certain tape-recorded phone calls between Bufalino and Mr. Lightbody are admissible against all three defendants under Rule 801(d)(2)(E). *See* Dkt. 83 at 10; Dkt. 102 at 5. In any event, the Government's belated, self-serving identification of Bufalino as an unindicted co-conspirator cannot determine the relevance of Bufalino's alleged reputation and historical criminal acts.

jury may provide to expert testimony.  *United States v. Monteiro*, 407 F. Supp. 2d 351, 358 (D. Mass. 2006) (Saris, J.).

 "Expert testimony must be relevant not only in the sense that all evidence must be relevant . . . but also in the incremental sense that the expert's proposed [testimony], if admitted, likely would assist the trier of fact to understand or determine a fact in issue."  *Id.* (internal quotation marks omitted; ellipsis in original).   Moreover, even relevant "expert testimony remains subject to exclusion under Rule 403" and should be excluded when it presents "a special risk of jury confusion."  *United States v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011).  Furthermore, the prosecution in a criminal case cannot call a law enforcement witness to the stand, label him an "expert," and have him "merely repeat[ ] information he . . . learned from witnesses through custodial interrogations, newspaper articles, police reports, and tape recordings," a practice that seeks to "circumvent the rules prohibiting hearsay."  *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (internal quotation marks omitted).

## ARGUMENT

The Government cannot possibly meet its admissibility burden here: Detective-Lieutenant Johnson's proffered testimony clearly and obviously violates numerous Rules of Evidence and cannot be squared with the most basic constitutional fair trial guarantees.  Rather than exhaustively catalogue all of the problems with Detective-Lieutenant Johnson's proffered testimony, Defendants' opening brief will highlight the glaring relevance, hearsay, and Rule 403 prejudice problem with the proffered testimony.

## I.     The Lack of Relevance

The Government's Rule 16(a)(1)(G) disclosure makes no effort to demonstrate how any of Detective-Lieutenant Johnson's testimony is relevant to any element of the charged scheme to

defraud Wynn Resorts Limited.  Defendants cannot possibly anticipate every creative relevance argument that the Government might try to invent from whole cloth.  At this juncture, however, it suffices to say that "how organized crime works," a narrative description of non-defendant Bufalino's historical criminal acts, and how "individuals such as Charles Lightbody" pay "tribute" to individuals such as Bufalino are issues that have no logical relevance to any element of the charged scheme to defraud Wynn Resorts Limited regarding a commercial real estate deal.

The lack of relevance is now particularly obvious in light of the Government's recent disclosure to the defense of the sworn testimony that Steve Wynn — the founder and namesake of Wynn Resorts Limited, the supposed fraud victim in this case — provided to the Massachusetts Investigations and Enforcement Bureau on September 9, 2013.  During that sworn testimony, Mr. Wynn stated: "We don't care about the history of the land. . . . You ask me would we do a due diligence [on] the 20 year history of an LLC, I'd laugh in your face."  *See* Exhibit B at 4, 5.

## II.    The Hearsay Problem

Whether "Bufalino was at one time a member of LCN member [Frank] Salemme's 'crew'" and "also operated at the direction of LCN member Mark Rosetti" are not facts that the Government is permitted to establish through hearsay.  Bufalino is not a defendant in this case, and thus Rule of Evidence 803(22) and the Supreme Court's decision in *Kirby v. United States*, 174 U.S. 47 (1899), preclude the Government from simply introducing Bufalino's prior convictions to prove that Bufalino actually engaged in any underlying criminal acts.  Equally obvious is that under the hearsay rules, Detective-Lieutenant Johnson cannot simply come into court and relay to the jury what he heard or learned about Bufalino during his "numerous debriefings of LCN figures," through his review of "thousands of LCN intelligence reports," and

"from numerous cooperators and confidential informants [ ] who were involved in LCN activities."

The Government cannot evade the hearsay rules simply by labeling Detective-Lieutenant Johnson as an "expert" and trying to funnel his hearsay testimony in through Rule 703. Detective-Lieutenant Johnson's proffered testimony that Bufalino is an LCN member who has committed criminal acts at the direction of various LCN leaders is not "expert" testimony within the meaning of Rule 702.   Instead, Detective-Lieutenant's conclusions regarding Bufalino are based on a combination of hearsay that he has received over a course of many years and on the type of deductive reasoning that is no different than what jurors are expected to do.   As the First Circuit has made clear, the prosecution "cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *United States v. Kantegwa*, 781 F.3d 545, 561 (1st Cir. 2015) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).

Another way to think of it is as follows: If Darin Bufalino were a defendant being tried on charges of conspiring with LCN and committing crimes at the direction of LCN leaders, would Detective-Lieutenant Johnson be allowed to testify as an "expert" and relay to the jury all of the information he learned through out-of-court statements of cooperators, confidential informants, fellow law enforcement officers, and others?   Of course he wouldn't.   *See, e.g.*, *United States v. Rodriguez-Adorno*, 695 F.3d 32, 39 (1st Cir. 2012) (holding that a law enforcement witness's testimony that an individual committed criminal acts is "lay" testimony fully subject to the hearsay rules).   Rather, the prosecution would be required to call to the witness stand those individuals with firsthand knowledge of Bufalino's alleged criminal acts (*i.e.*, the witnesses who observed those acts firsthand with their own eyes and ears), and the job of

concluding whether the testimony of those witnesses established Bufalino's wrongdoing would "belong to the factfinder," not a law enforcement witness. *Kantegwa*, 781 F.3d at 561 (quoting *Marvel*, 726 F.3d at 136). The fact that Bufalino is not a defendant in this case does not mean that Government is entitled to an evidentiary shortcut or a special exception to the hearsay rules; to the contrary, the fact that Bufalino is not a defendant in this case puts an additional evidentiary burden on the Government, *see Kirby*, 174 U.S. 47.

### III.    The Extreme Rule 403 Prejudice Problem

This trial would instantly be rendered constitutionally unfair were the words "La Cosa Nostra" so much as uttered in the courtroom. Federal courts have recognized that "evidence of a defendant's gang affiliation is potentially prejudicial and inflammatory, as it poses the risk that the jury will associate gang membership for committing crimes and find the defendant guilty by association." *United States v. Ozuno*, 674 F.3d 677, 681 (7th Cir. 2012). It is so prejudicial that federal courts have reversed convictions where the prosecution has merely asked a question that insinuated a connection between the defendant and the mafia. *See United States v. Love*, 534 F.2d 87, 88-89 (6th Cir. 1976). In *Love*, for example, "reversal [was] required because the prosecutor intentionally and for no proper purpose injected into the trial the spectre of organized crime and the Mafia." *Id.* Indeed, even where the defendant is charged with a RICO offense, district courts will preclude the prosecution from introducing evidence of the defendant's prior alleged mafia activities. *See United States v. Valpendesto*, 746 F.3d 273, 294 (7th Cr. 2014). There is thus no basis in law for the Government to be allowed here, in a case that does not involved RICO charges, to introduce evidence of non-defendant Bufalino's LCN offenses and then "connect" Bufalino to Defendants via Charles Lightbody's friendship with him.

The Government engaged in a "no stone unturned" investigation of Defendants' alleged scheme to defraud Wynn Resorts Limited; whether the Government's evidence is convincing beyond a reasonable doubt should be decided by a jury that is not distracted and inflamed by extrinsic testimony, references, and insinuations regarding organized crime.  It does not take any stretch of the imagination to see how radically the entire tenor of the trial would be altered, to the extreme unfair prejudice of all three defendants, were this case to devolve into a series of mini-trials about the historical criminal activities of the LCN and certain of its supposed members.[3]

Mr. DeNunzio and Mr. Gattineri have never had any prior contact with the criminal justice system.  They have succeeded in academics, athletics, and business by working hard and following the rules.  And they have contributed their time and charity to their local communities for decades.  As for Mr. Lightbody, his prior felony record does not make him any less entitled to a constitutionally fair trial; if anything, it makes his fair trial rights even more imperative.  The Government's attempt to try this case on a guilt-by-association theory cannot be squared with Defendants' right to a constitutionally fair trial.

Fortunately, this case is taking place in an impartial federal court that is governed by rules and precedent that have meaning.   These rules and precedent do not allow the Government to turn this trial into an examination of non-defendant Bufalino's supposed mafia ties and into whether Charles Lightbody's friendship with Bufalino makes him a mafia associate too.

---

[3] To comply with the hearsay rules and personal knowledge requirement, any such undertaking would surely add weeks to the Government's case-in-chief, and for no reason other than to push jurors to associate Defendants with organized crime.

**CONCLUSION**

Defendants' motion to strike should be granted.  Defendants' respectfully request oral argument on this motion so that their counsel can personally address the Court and answer any questions that the Court might have on this most critical issue.

Respectfully submitted,

/s/ Aaron M. Katz
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Alexandra L. Roth (BBO # 687847)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Fax: (603) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com
Alexandra.Roth@ropesgray.com
*Attorneys for Dustin DeNunzio*

/s/ Michael J. Connolly
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com
*Attorneys for Anthony Gattineri*

/s/ Charles W. Rankin
Charles W. Rankin (BBO #411780)
Rankin & Sultan
151 Merrimac St. #200
Boston, MA 02114
crankin@rankin-sultan.com
*Attorney for Charles Lightbody*

Dated: March 2, 2016

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants have in good faith attempted to confer with counsel for the Government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ *Joshua S. Levy*

## CERTIFICATE OF SERVICE

I, Joshua S. Levy, hereby certify that, on March 2, 2016, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

/s/ *Joshua S. Levy*