UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>(1) DUSTIN J. DENUNZIO,<br>(2) ANTHONY GATTINERI, and<br>(3) CHARLES A. LIGHTBODY,<br><br>Defendants. | Criminal No: 14-CR-10284-NMG |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE THE USE OF
IMPROPER PROSECUTION "OVERVIEW" TESTIMONY**

Defendants have moved *in limine* to preclude the Government from introducing improper prosecution "overview" testimony, which the First Circuit has recognized as among the most unfairly prejudicial evidence that can be introduced against a criminal defendant. Defendants have filed this motion, rather than relying only on contemporaneous trial objections, because of the serious risk that the Government intends to put in the majority of its case through "overview" witnesses, including members of the FBI, the Massachusetts Department of Corrections ("DOC"), the Massachusetts State Police, the Massachusetts Investigations and Enforcement Bureau ("IEB"), and the Massachusetts Gaming Commission.

**RELEVANT FACTS**

This prosecution arises from a multi-jurisdictional investigation that was partly regulatory and partly criminal and that originally had nothing whatsoever to do with a local LLC's sale of land to Wynn Resorts Limited. Based on the pre-trial discovery materials, it appears that the

1

DOC contacted the U.S. Attorney's Office and FBI sometime in early 2013 because DOC officer Michael Kradolfer thought that tape-recorded prison phone calls between Darin Bufalino and Defendant Charles Lightbody might relate to a pending public corruption investigation against an Everett elected official.  When the U.S. Attorney's Office and the FBI listened to the tape recordings, apparently they surmised that the casino-related discussions between Bufalino and Mr. Lightbody might be relevant to the Massachusetts Expanded Gaming Act, and so in early July 2013 they contacted the IEB.  The IEB then commenced its own investigation into Mr. Lightbody and FBT Everett Realty LLC, turning the results of that investigation over to the Gaming Commission.  Around the same time, the U.S. Attorney's Office and the state Attorney General's Office opened grand jury investigations into FBT and its members, with state prosecutors being cross-designated as special AUSAs for purposes of the federal grand jury proceeding.  Soon after the grand jury proceedings commenced, the Gaming Commission held public hearings on the matter and voted to turn its and the IEB's investigative files over to the U.S. Attorney's Office.

The Government put before the grand jury the testimony of a DOC officer, two State Police officers working on behalf of the IEB, and at least one FBI agent.  These witnesses routinely provided the sort of prejudicial law enforcement "overview testimony" that, even if permissible in the grand jury, would clearly be improper at a trial, including conveying hearsay, providing argumentative interpretations of circumstantial and documentary evidence that the jury is perfectly capable of assessing on its own, and testifying substantially beyond their own personal knowledge.

## APPLICABLE LAW

"An 'overview witness' is a government agent who testifies as one of the prosecution's first witnesses and, as the term implies, provides an overview or roadmap of the prosecution's case to come." *United States v. Etienne*, 772 F.3d 907, 913 (1st Cir. 2014). The First Circuit has repeatedly issued "condemnation of the use of overview witnesses . . . ." *United States v. Flores-de-Jesus*, 569 F.3d 8, 18 (1st Cir. 2009). Over the course of many holdings over the past 10 years, the First Circuit has established several clear lines that a prosecutorial "overview witness" is not permitted to transgress: **(1)** the witness is not allowed to provide the jury with a sneak preview of documentary evidence and witness testimony that the prosecution hopes to elicit later in its case; **(2)** the witness cannot testify to matters beyond his personal knowledge, such as the investigative activities of other law enforcement agents or government officers who are not on the witness stand, or relay hearsay; **(3)** the witness cannot offer argumentative characterizations of evidence that the jury is charged with assessing; and **(4)** the witness's testimony cannot shade into opinions about the defendant's culpability.

In *Flores-de-Jesus*, the First Circuit held that there "is no justification for presenting an overview witness who simply anticipates the testimony of other government witnesses . . . ." *Id.* at 20. The First Circuit also held in *Flores-de-Jesus* that "[a]bsent a basis in personal knowledge, . . . [an] overview witness may not offer substantive testimony about the nature of the conspiracy or the involvement of particular defendants." *Id.* The First Circuit has recognized that overview testimony is often "rife with hearsay," in clear violation of the Rules of Evidence. *Id.* The First Circuit has warned in particular that, where the law enforcement overview witness "express[es] opinions as to [the] defendant's culpability based on the totality of information gathered in the course of [his] investigation," such testimony "effectively serves to

usurp the jury because the witness's inference is based on the same circumstantial evidence presented to the jury." *United States v. Laureano-Perez*, 797 F.3d 45, 66 (1st Cir. 2015).

The First Circuit in *Etienne* also held without reservation that it is "not acceptable when 'a government witness testifies about the results of a criminal investigation' . . . 'before the government has presented [any other] evidence.'" 772 F.3d at 914 (quoting *United States v. Rosado-Perez*, 605 F.3d 48, 55 (1st Cir. 2010)). The court in *Etienne* described such testimony as "nothing more than an improper attempt to transmute the prosecutor's opening argument into substantive evidence." *Id.* The First Circuit "highlight[ed]" a similar problem in *United States v. Vazquez-Rivera*, 665 F.3d 351, 358-59 (1st Cir. 2011), holding that a law enforcement agent's overview testimony "is all the more worrisome where . . . [it] appears to at least partly rest on the collective insight of other unknown investigators who may not themselves be present at trial."

In addition, the First Circuit has recognized that law enforcement "overview testimony," even when based on personal knowledge and not a relaying of hearsay, remains "especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government." *United States v. Casas*, 356 F.3d 104, 119 (1st Cir. 2004). Thus, the First Circuit has refused to issue a categorical endorsement even of testimony that is "limited to a description of [the witness's] activities in the course of an investigation . . . ." *Etienne*, 772 F.3d at 914. Rather, even such "limited" testimony is permissible only in "some circumstances," *id.*, and the law enforcement witness may not "shade into a statement of the government's theory of the case or conclusory statements about the defendant's culpability." *United States v. Rodriguez-Adorno*, 695 F.3d 32, 38 (1st Cir. 2012). For example, in *Rodriguez-Adorno*, the First Circuit held that the prosecution's initial case agent witness provided impermissible "overview" testimony when he characterized the defendant's alleged conduct "as a 'carjacking.'" *Id.* at 39.

The First Circuit explained that when a law enforcement witness provides that type of loaded "characterization" to an event that the jury can assess for itself, it constitutes "inadmissible lay opinion testimony as to the ultimate issue of appellant's culpability." *Id.* Similarly, in *Vasquez-Rivera*, 665 F.3d at 360, the First Circuit held that the district court should have stricken those portions of the case agent's testimony that "expressed conclusions about [the defendant's] culpability . . . ." And in *United States v. Meises*, 645 F.3d 5, 17 (1st Cir. 2011), the First Circuit held that, even though the prosecution's testifying case agent personally had participated in nearly the entire investigation of the defendant, it was still patently improper for the agent to provide testimony that "amounted to argumentative interpretation" of "the same circumstantial evidence that was before the jury — effectively usurping the jury's role as fact-finder."

## ARGUMENT

Defendants obviously cannot anticipate all of the ways in which the Government might seek to elicit prejudicial testimony from its various overview witnesses. For now, it suffices to say that, because a variety of different regulatory and enforcement agencies were involved in the investigation of Defendants, there is an especially high risk that the Government will seek to use "overview" witnesses as the primary means to prove Defendants' guilt.

A similar risk existed in the recent high-profile prosecution of British Petroleum executive David Rainey. Rather than force Mr. Rainey's defense counsel to resort solely to contemporaneous objections at trial, District Judge Kurt Engelhardt agreed to issue an *in limine* ruling that made clear what the prosecution's "overview" witnesses would and would not be allowed to do from the witness stand. Applying Fifth Circuit law, Judge Rainey ordered that any case agent overview witness "shall be limited to his/her personal first-hand knowledge, and shall exclude any opinions regarding . . . evidence." *United States v. Rainey*, 2015 WL 3446647, at *1

(E.D. La. May 28, 2015) (attached for the Court's convenience as Exhibit A). Judge Engelhardt also ruled that no overview witness would be allowed to "'summarize' the Government's evidence, as the initial or early-appearing witness at this trial," or to "give an 'overview' of this case." Finally, Judge Engelhardt ruled that "an 'overview' witness will not be allowed to do a 'roll out' of the grandeur of the Government's sprawling investigation into its various suspicions, targets, and issues encountered on the road to filing [its indictment] against this defendant." *Id.*

Defendants respectfully request that this Court issue an order substantially similar to the one that Judge Engelhardt issued in *Rainey*. The First Circuit law on the use of "overview witnesses" is in accord with the Fifth Circuit's. Indeed, the First Circuit's leading case on the issue, *United States v. Casas*, 356 F.3d 104, 119 (1st Cir. 2004), specifically endorsed the Fifth Circuit's leading case, *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003). Thus, this Court may, consistent with First Circuit law, adopt the order that Judge Engelhardt issued in *Rainey*, modifying it as necessary to fit the specific facts and context of this case.

## CONCLUSION

For the reasons stated above, Defendants motion *in limine* should be granted.

        Respectfully submitted,

        /s/ Joshua S. Levy
        Joshua S. Levy (BBO #563017)
        Aaron M. Katz (BBO #662457)
        Alexandra L. Roth (BBO # 687847)
        Ropes & Gray LLP
        Prudential Center
        800 Boylston St.
        Boston, MA 02199
        Phone: (617) 951-7000
        Fax: (617) 951-7050
        Joshua.Levy@ropesgray.com
        Aaron.Katz@ropesgray.com
        Alexandra.Roth@ropesgray.com
        *Attorneys for Dustin DeNunzio*

        /s/ Michael J. Connolly
        Michael J. Connolly (BBO #638611)
        Laura B. Angelini  (BBO #658647)
        Hinckley, Allen & Snyder LLP
        28 State Street
        Boston, MA 02109
        Phone: (617) 345-9000
        Fax: (617) 345-9020
        mconnolly@hinckleyallen.com
        langelini@hinckleyallen.com
        *Attorneys for Anthony Gattineri*


        /s/ Charles W. Rankin
        Charles W. Rankin (BBO #411780)
        Rankin & Sultan
        151 Merrimac St. #200
        Boston, MA 02114
        crankin@rankin-sultan.com
        *Attorney for Charles Lightbody*

Dated: March 7, 2016

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants have in good faith attempted to confer with counsel for the Government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

> /s/ *Joshua S. Levy*_____
> Joshua S. Levy

## CERTIFICATE OF SERVICE

I, Joshua S. Levy, hereby certify that, on March 7, 2016, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

> /s/ *Joshua S. Levy*_____
> Joshua S. Levy