UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 14-cr-10284-NMG |
| | ) | |
| v. | ) | |
| | ) | |
| (1) DUSTIN J. DENUNZIO, | ) | |
| (2) ANTHONY GATTINERI, and | ) | |
| (3) CHARLES A. LIGHTBODY | ) | |
| | ) | |
| Defendants | ) | |

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF ALLEGATIONS THAT DEFENDANTS FAILED TO
DISCLOSE JAMIE RUSSO'S 3% COMMISSION INTEREST IN FBT**

Defendants ask the Court to preclude evidence that they hid Jamie Russo's three percent interest in the Everett Parcel from Wynn and the Massachusetts Gaming Commission (MGC) (Docket Nos. 295, 296).   The Indictment alleges Defendants' failure to disclose Russo's interest to Wynn and the MGC and those allegations are part and parcel of the charged scheme to defraud. As such, they are clearly relevant and admissible and the Court should deny the Motion.

## RELEVANT FACTS

It is not disputed that Russo had a three percent interest in the proceeds of the sale of the Everett Parcel dating back to at least early 2010.   It is not disputed that there is no admissible evidence that Russo was receiving three percent of the sale of the Everett Parcel as a "commission" for "performance of consulting and brokerage work."   It is not disputed that in November 2013, after learning that DeNunzio, Gattineri and others had failed to cooperate with IEB investigators, Wynn required FBT to disclose "each person with a legal or beneficial ownership interest, direct or indirect" in FBT, and to represent that FBT had not "made or [had] any agreement, whether oral or written, to make, any payments to any other person or entity from the proceeds of the Agreement

1

including, without limitation, any of the option payments . . . or any portion of the Purchase Price."
*See* Exhibit 1, 5.   It is also not disputed that DeNunzio signed that document on or about
November 26, 2013, and disclosed only DeNunzio, Paul Lohnes and Anthony Gattineri to Wynn.
*Id.*   And it cannot be disputed that it was not until December 23, 2013, when the MGC required
DeNunzio, Lohnes and Gattineri to sign the same certification *under oath*, that DeNunzio
disclosed Russo's interest in the Everett Parcel.[1]   *See* Exhibit 2, 1.

It is beyond dispute – because the interviews were tape recorded – that IEB investigators
asked DeNunzio and Gattineri whether there was anyone else with a financial interest in the
Everett Parcel, and that neither Defendant disclosed Russo's interest to the investigators.   In
addition, it is beyond dispute that during a July 12, 2013 call, Lightbody reported to Russo that the
IEB investigators had interviewed him about the Everett land.   Russo asked "Did they ah, they
mention me?" and Lightbody responded "No, they didn't mention you."   Further, Wynn's general
counsel testified in the grand jury that she expected that DeNunzio would have disclosed anyone
with a financial interest in the Everett Parcel in his January 17, 2013 email to her which he
cunningly titled "Equity Holders in FBT," but which contains the representation (in response to
Wynn's general counsel's query) that DeNunzio, Gattineri and Lohnes were "the three people who
have interest in FBT Everett Realty LLC."   Docket No. 296-3.   That the January 17, 2013 email
and the November 26, 2013 unsworn certification to Wynn also did not include Trip McCoy is a
red herring –McCoy was a "nationally-recognized gaming industry consultant" with a written
agreement with FBT "whom Wynn *knew was representing FBT in the Wynn transaction.*"
Docket No. 296, 3 (emphasis added).   Russo was Lightbody's business partner, performed no

---

[1] Defendants state that DeNunzio voluntarily completed the "bespoke 'Confirmation of Representation' to the MGC"
at Wynn's request.   Docket No. 296, 2 n. 2.   While perhaps Wynn relayed the MGC's request to DeNunzio, it was
the MGC that required that the Confirmation of Representation be signed under oath by each alleged member of FBT.

work for FBT, had no written agreement with FBT, yet was entitled to receive three percent of the sale of the land.

DeNunzio only disclosed Russo's interest in the Everett Parcel in December 2013 because the jig was up.   By December 23, 2013, federal investigators were aware, through witness testimony and emails obtained from FBT and pursuant to search warrants, that Jamie Russo had an interest in the Everett Parcel.   Gattineri and DeNunzio presumably knew that Russo's interest was no longer hidden, and when asked to sign the certification under oath, DeNunzio had no choice but to disclose Russo.   Gattineri went further, certifying only that he had a 46.69% interest in FBT and that he had not agreed to give anyone else any share of his proceeds of the sale of the Everett Parcel.   Gattineri did not provide any certification as to what was to happen with the other 43.31% interest in FBT.

## ARGUMENT

Defendants' entire argument is based on their characterization of the evidence regarding Russo's interest in the Everett Parcel as a "non-disclosure."   However, this was not a case of non-disclosure, and whether the law requires a duty to disclose or active concealment of non-disclosed facts under the fraud statutes is therefore irrelevant.   *See In re Lupron Marketing and Sales Practices Litigation,* 295 F.Supp.2d 148, 168 (D.Mass. 2003).

Defendants did not stand mute when the IEB investigators asked them whether there was anyone with a current financial interest in the Everett Parcel, they disclosed only Lohnes, DeNunzio and Gattineri but they did not disclose Lightbody or Russo.   The term "false or fraudulent pretenses," as used in the mail and wire fraud statutes, "means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth and that were made with the

intent to defraud." *First Circuit Pattern Criminal Jury Instructions* § 4.18.1343.   Such false statements or assertions "include actual, direct false statements as well as half-truths and the knowing concealment of facts."   *Id.*   Defendants' statements to the IEB investigators and DeNunzio's statement to Wynn were classic half-truths, *i.e.*, statement that are "literally true but [] made misleading by a significant omission."   *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 70 (1st Cir. 1998).

Because Defendants' representations are classic half-truths, the Court need not consider whether DeNunzio had a "legal, professional or contractual" obligation to disclose Russo's interest in the land to Wynn or the MGC.   However, the government notes that Article XI of the Option Agreement between Wynn and FBT states: "[FBT] hereby represents and warrants to [Wynn] that they have not dealt with any broker or finder with respect to the transaction contemplated hereby."   *See* Exhibit 3, 22.   If Russo really was a broker for FBT, then FBT had a contractual obligation to disclose Russo to Wynn and Defendants' failure to disclose Russo constituted fraud even in the realm of non-disclosure cases.

Stripped of their "non-disclosure" argument, the Defendants' Motion presents no basis for exclusion of the evidence regarding Defendants' failure to disclose Russo's interest in the land to the MGC and Wynn.   The government has never alleged that the failure to disclose Russo's interest in the land was material to the MGC and Wynn.   Accordingly, the government does not anticipate offering evidence regarding Russo's criminal history or reputation at trial, and Defendants' argument that the allegation is "a carefully calculated Trojan horse" falls flat. Defendants' failure to disclose Russo's interest to Wynn or the MGC until after his interest was known to investigators is relevant evidence of the scheme to defraud Wynn and the MGC and of Defendants' intent in concealing Lightbody from Wynn and the MGC.   Specifically, the

government intends to argue that Defendants failed to disclose Russo because he is Lightbody's friend and business partner, and the fact that he had an interest in the land after Lightbody was purportedly bought out would raise significant questions for Wynn and the MGC about Lightbody's status in the deal.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Respectfully submitted

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

Date:    March 14, 2016            By:    /s/Kristina E. Barclay
                                          KRISTINA E. BARCLAY
                                          S. THEODORE MERRIT
                                          Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: March 14, 2016              /s/Kristina E. Barclay
                                  Kristina E. Barclay
                                  Assistant United States Attorney