UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 14-cr-10284-NMG |
| | ) | |
| (1) DUSTIN J. DENUNZIO, | ) | |
| (2) ANTHONY GATTINERI, and | ) | |
| (3) CHARLES A. LIGHTBODY | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE ADMISSION OF LIGHTBODY STATEMENTS**
Leave to file granted on March 22, 2016 [Dkt.361]

The United States submits this memorandum to supplement its previously filed memorandum in support of the admission against all Defendants of certain statements by Charles Lightbody. *See* Docket No. 326. This memorandum supports an additional and/or alternative ground for the admission of many of Lightbody's statements made during the recorded calls between Lightbody and Bufalino and/or other friends and associates as statements against his penal or pecuniary interest under a recognized exception to the hearsay rule.

**I.     STATEMENTS AGAINST PENAL OR PECUNAIRY INTEREST**

Rule 804(b)(3) of the Federal Rules of Evidence provides an exception to the hearsay rule when a declarant is unavailable[1] as a witness and the statement meets the following criteria :

(3) **Statement against interest.** A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . to expose the declarant to civil or criminal; and

---

[1] Rule 804(a) defines situations in which a declarant is unavailable to include where the declarant/witness has a Fifth Amendment privilege from testifying.

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if offered in a criminal case as one that tends to expose the declarant to criminal liability.

The question under Rule 804(b)(3) is "always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Williamson v. United States*, 512 U.S. 594, 603-604 (1994) (plurality opinion); *United States v. Fogg*, 666 F.3d 13, 17 (1st Cir. 2011); *United States v. Barone*, 114 F.3d 1284, 1295 (1st Cir. 1997).  The answer to this question depends upon a fact-intensive inquiry of "all the surrounding circumstances." *Williamson*, 512 U.S. at 603-604; *United States v. Monserrate-Valentin*, 729 F.3d 31, 52 (1st Cir. 2013).  "Moreover, whether a statement is self-inculpatory or not can only be determined by viewing it in context.  Even statements that are on their face neutral may actually be against interest."   *Williamson*, 512 U.S. at 603.[2]

"A statement against penal interest is not rendered inadmissible 'merely because the declarant names another person or implicates a possible co-defendant.'" *Barone*, 114 F.3d at 1295 (quoting *Williamson*, 512 U.S. at 606 (Scalia, J. concurring)).  This is particularly applicable when the declarant and the co-defendant are charged in a conspiracy.  For example, in *Williamson*, the Court used as an example of an admissible statement against penal interest "Sam and I went to Joe's house," reasoning that this statement "might be against declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy." *Williamson*, 512 at 603;

---

[2] For purposes of Rule 804(b)(3), a "statement" is a single declaration or remark. *Williamson*, 512 U.S. at 600-01.  Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id*.  The inquiry must, therefore, focus on whether an individual hearsay statement inculpates the declarant. *Id*. at 598-603.

*Barone*, 114 F.3d at 1295, n.5.

"In addition to being sufficiently self-inculpatory, the statement must also be supported by corroborating circumstances that clearly indicate its trustworthiness." *Monserrate-Valentin*, 729 F.3d at 52. Statements not made to police but to friends, family or associates typically constitute sufficient corroborating circumstances. *See id.* (statements were sufficiently corroborated as trustworthy because they were made to close relative); *Barone*, 114 F.3d at 1301 (that declarant made statement to close relatives "in a noncustodial setting rather than to the police" and that he had no reason to lie were factors constituting "corroborating circumstances"); *United States v. Shea*, 211 F.3d 658, 668 (1st Cir. 2000) (statements to various friends and associates deemed reliably against penal interest because not made to police in effort to shift blame). Furthermore, the fact that statements were made to friends or associates can constitute sufficient corroborating evidence indicating truthfulness even if the defense can supply a plausible alternative explanation for why those statements were made. *See United States v. Pelletier*, 666 F.3d 1, 8–9 (1st Cir. 2011).

Because Lightbody's various statements meet the criteria of Rule 804(b)(3), *see infra*, they are admissible against his co-defendants. *See Williamson v. United States*, 512 U.S. 594, 603 (1994) ("a declarant's squarely self-inculpatory confession – 'yes, I killed X' – will likely be admissible under Rule 804(b)(3) against accomplices of his who are being tried under a co-conspirator liability theory."); *see also Shea*, 211 F.3d at 668 (statements to associates by one co-defendant which met statement against interest exception were admissible against other co-defendants).[3]

---

[3] The admission of the Lightbody statements creates no *Bruton* problem because they do not facially implicate any of the co-defendants.

## II. LIGHTBODY'S STATEMENTS ON PRISON CALLS

The Indictment alleges, and the evidence will show, that the object of the charged conspiracy was to conceal Lightbody's continuing ownership interest in the Everett Parcel from Wynn Resorts and the Massachusetts Gaming Commission. The evidence will show that Defendants were aware that Lightbody's criminal past would be an obstacle to the sale of their land to prospective buyers who wanted to build a casino as early as August 2012 when they negotiated an option agreement to purchase the land with representatives Och-Ziff, a hedge fund financing the Hard Rock Café. In a recorded prison call with Bufalino on August 16, 2012, Government Ex. 2A, Lightbody tells him that he and his partner have discussed how they would hide his ownership interest:[4]

| | |
|---|---|
| CHARLES LIGHTBODY: | **Oh yeah, well I put it in an LLC, so my name don't show up because ah between you and I, I think I told you my partner was like "You know, we can you take your name off and just put it in a blind LLC?" I go "Listen. I have no problem with that, you know?** I want to be the guy *(inaudible)* a hundred million." |
| DARIN BUFALINO: | Right, right, right. |
| CHARLES LIGHTBODY: | **I said "I'll take my name off." I got no problem and now actually it works out because these casinos, they see my name in there and they ain't going to like it.** |
| DARIN BUFALINO: | Right. |
| CHARLES LIGHTBODY: | You know, whether they like the property or not. You know how the fucking politics are. |
| DARIN BUFALINO: | Oh yeah, absolutely. It's a, it's enough… |
| CHARLES LIGHTBODY: | **So I'll never show up on it which is a good thing**. |

These statements by Lightbody are against both his penal and pecuniary interests because

---

[4] The transcripts of the prison and Title III calls the government seeks to admit are attached as Govt. Ex. __A, which correspond to the exhibit numbers of the recordings themselves.

their content, if disclosed further, show that he was hiding his continued ownership and would jeopardize the anticipated sale and its immense profits.

On August 22, 2012, Govt. Ex. 3A, after the agreement with Och-Ziff was signed, Lightbody tells Bufalino the following:

CHARLES LIGHTBODY: **We're all signed up, so at least ah in forty-five days, unfortunately it's forty-five days, they start giving us a hundred a month**.

DARIN BUFALINO: *(Laughs)*

CHARLES LIGHTBODY: But you know, like it sounds like a lot, it's kind of funny it is a lot but we're paying fifty, fifty a month now in taxes, you know.

DARIN BUFALINO: I understand, but it's a hundred a month…

CHARLES LIGHTBODY: **Hey, buddy, you kidding me, it's a score for me. It stops all the bleeding.**

DARIN BUFALINO: It's a hundred a month that you didn't have, bro.

CHARLES LIGHTBODY: **Exactly.**

After the Hard Rock deal fell through, in a November 13, 2012 call, Govt Ex. 5A, Lightbody tells Bufalino about Wynn's interest:

CHARLES LIGHTBODY: Yeah I hear that Steve Wynn is supposed to be coming down tomorrow at ten thirty to talk to the mayor.

DARIN BUFALINO: Really?

CHARLES LIGHTBODY: Yeah, so I'm hoping that flies, you know. That would be nice.

DARIN BUFALINO: Steve Wynn's with the Hard Rock?

CHARLES LIGHTBODY: No, he's coming in from Vegas with some other company now. **Now it's open season cause the Hard Rock never paid us the money they promised us,** you know it's typical. *(inaudible: talking to someone else)* What was I gonna say, the, yeah they're coming in tomorrow, Steve Wynn.

DARIN BUFALINO: They didn't pay you?

5

| | |
|---|---|
| CHARLES LIGHTBODY: | **No, they never paid us the money**, the mother fuckers. |

After Wynn representatives started negotiating an option agreement with FBT, in a December 5, 2012 call, Govt. Ex. 7A, with Bufalino again acknowledges his continued financial interest:

| | |
|---|---|
| CHARLES LIGHTBODY: | Yup That's what I said. I go **we've got Steve Wynn in our corner,** let him come in to go up, these people's stocks are going down the shitter. |
| DARIN BUFALINO: | Yeah, well you still got the Hard Rock boys in there too, right? |
| CHARLES LIGHTBODY: | Well yeah but we basically kicked them to the curb cause they weren't performing and we took on Wynn. **Now Wynn's supposed to start paying us a hundred thousand a month December fourteenth.** |
| DARIN BUFALINO: | Right. |
| CHARLES LIGHTBODY: | **So they're supposed to pay us a hundred thousand a month and then we signed the purchases and sales with them, it's not binding yet, it will be when they give us the first check for seventy-five million.** |

After an article about Gary DeCicco, a former FBT owner with a criminal record, appeared in the *Boston Business Journal*, in a recorded call on December 11, 2012, Govt. Ex. 8A, Lightbody and Bufalino discuss his situation:

| | |
|---|---|
| CHARLES LIGHTBODY: | Yeah, exactly so that's who they're using. So they're asking the newspapers, calling them up about Gary Decicco. So they said, you know, they were asking Chris about Gary Decicco and he's a felon and this and that. So now, obviously you know my situation, so they're they're punching and hooking, Gary, Gary, Gary, Gary, Gary. **So my attorney calls my partner and myself and we have a little conference call and says "Listen. Do you know that this commission, when when there is a casino that not only them but whoever is selling the land cannot have a criminal record."** |
| DARIN BUFALINO: | Ahh…ahh. |
| CHARLES LIGHTBODY: | **So so so what they're saying is that any proceeds that come from a sale of a casino or a casino cannot go to a felon.** |

6

| | |
|---|---|
| DARIN BUFALINO: | Ahh. |
| CHARLES LIGHTBODY: | **But the only good thing is nobody knows who is involved which makes it good because now I can just move on, you know what I mean?** |
| DARIN BUFALINO: | You need to move on. |
| CHARLES LIGHTBODY: | **So basically they're going to buy me out and…** |
| DARIN BUFALINO: | **You need to move on. You need to double blind it**. |
| CHARLES LIGHTBODY: | **Exactly.** |
| DARIN BUFALINO: | **You need to triple blind it actually.** |
| CHARLES LIGHTBODY: | **Well that's what were doing.** |
| DARIN BUFALINO: | I know I explained this to you once before at least I think I did… |
| CHARLES LIGHTBODY: | Yeah you did about Wynn. Yeah. Yup, in New Jersey. |

Lightbody's statements affirming that he was "double" and "triple blinding" his interest expose him to criminal liability and are also against this pecuniary interests.

On December 20, 2012, in a recorded call, Govt. Ex. 9A, Lightbody reports to Bufalino that FBT has signed the agreement, still acknowledging that he is an owner:

| | |
|---|---|
| CHARLES LIGHTBODY: | **We signed the deal yesterday**. |
| DARIN BUFALINO: | Yeah, yeah, I seen it on the news. |
| CHARLES LIGHTBODY: | When? |
| DARIN BUFALINO: | Ah actually, you know what, that was a couple days ago. |
| CHARLES LIGHTBODY: | No that was the old one, that was the fucking fake one. That's the one Carlo DeMaria told everybody it was signed and it wasn't. |
| DARIN BUFALINO: | Right, okay. |
| CHARLES LIGHTBODY: | **So now we actually…we signed it.** |
| DARIN BUFALINO: | Good. |

7

CHARLES LIGHTBODY:   You ain't kidding.

DARIN BUFALINO:   You know?

CHARLES LIGHTBODY:   Yup.

DARIN BUFALINO:   Good, good I'm happy to hear that.  **That's a welcome Christmas gift, no?**

CHARLES LIGHTBODY:   **You ain't kidding buddy, (laughing) that's for damn sure.**

Again, Lightbody would not be stating that "we" signed the agreement and was expecting money unless it was true because acknowledging those facts were contrary to his pecuniary and penal interests.

### III.  LIGHTBODY'S TITLE III INTERCEPTED CALLS

The government has already briefed and explained how many of Lightbody's statements to associates and friends other than Bufalino were admissible as co-conspirator statements or on other nonhearsay grounds.  *See* Docket No. 326.  This section supports their admission under Rule 804(b)(3).

For example, beginning in the Fall of 2012 through May 2013, in effort to secure refinancing on some real properties, Lightbody orally and in writing provided information at various times to Paul Simms, a loan officer at First Ipswich Bank confirming that he had 13.5% interest stake in the Everett Parcel, and that the pending purchase deal with Wynn could potentially increase his stake in value to almost $10 million.  Such statements exposed Lightbody to criminal liability because at that time he and his conspirators were concealing from Wynn this material information.

On July 2, 2013, during an intercepted call [Govt. Ex 131A] between Lightbody and Gary DeCicco (a former co-owner of the Everett Parcel), they discussed concerns about Defendant Anthony Gattineri:

8

    CL:    Well he's a maggot.

    GD:    He, he's just an absolute asshole. I know people that have known him for 30 years and they told me, they said there's not a decent bone in the guy's body. **And if the fucking shit hits the fan over on that property, he will be the first one to rat anything or anybody…**

    CL:    **Oh yeah.**

Lightbody's statement affirming about Gattineri's potential to be a "rat" tends to inculpate Lightbody because it demonstrates his concern about his criminal liability. The statement, which does facially incriminate Gattineri, is also self-inculpatory to Lightbody because it links him the conspiracy. *See United States v. Tocco*, 200 F.3d 401, 414-415 (6th Cir. 2000) (statements were against declarant's penal interest because they linked him to others in the conspiracy).

On July 2, 2013, in an intercepted call between Lightbody and Michael DiPlatzi, a friend and business associate, Govt. Ex. 130A, the following exchanges occurred:

    MD:    **How many partners you got in there Charlie?**

    CL:    **Two**.

    MD:    Oh, just two? Oh alright.

    CL:    Yeah, just two, yeah.

    MD:    **You'll be off and fucking you'll be off and running if you get that.**

    CL:    **Oh, forget it. You kidding me? It's fucking retarded**.

    MD:    What will you do?

    CL:    What will I do? Buddy, that's not even the money maker. The money maker is the other thing I bought around the corner.

    MD:    Which one?

    CL:    King Arthur's.

MD: Oh you ended up buying that?

CL: Yeah, that's the fucking money maker right there. The fuckin, forget about the casino, you'll make more money in the strip joint than you will in the casino.

Later in the conversation they discuss the tax consequences of the sale of Everett Parcel:

MD: Yeah but let me ask you a question, why would you, if you, if you sold the land, why would you even want the [UI] to having a fucking, uh a business [referring to Lightbody purchasing the King Arthur's, as described above]?

CL: Uh because it's like anything else, buddy. It's like you, I mean how much money, you know, if you've got $10 million, you want $20 million. If you want 20 you want 30. **But, because I'll tell you the truth, I'm 1031-ing all my money. I got a deal with my partner that we're looking at right now, it's fucking, it like you know it's in a whole different league. You know what I mean? My partner, my partner's got all the money. My partner owns, he's owns, we own 25%, he owns 50%. So he wants, he wants to take his profit and my profit and buy a building for $200 million**.

MD: Ok.

CL: Now you're in a whole different league.

MD: Right. [UI]

CL: So basically what makes you want to get the money, I'm not even going to be able to touch it because the tax revenue is so high it's crazy. . .You know what I mean? . . . To, to, to, to take that money, to take $50 million out of a project you're going to have to pay, [UI] you'll have to pay $20 million of fucking taxes. You know, it doesn't make much sense to take the money. It's scary but it's the truth.

MD: Oh I know.

CL: We're looking at a project here; we could make 15 or 20% on a 200 million dollar building that you'll pull $15 million a fucking year out of there.

MD: Right. [UI] What do you do with that kind of money though?

CL: I don't know buddy, truthfully. I'll let you know when I get my hands on it.

Here, Lightbody is telling a friend and associate that he has partners in the deal, that he stands to make a lot of money, and that they plan to re-invest in a $200 million building. Again these statements run so contrary to Lightbody's penal and pecuniary interests that a reasonable man would not make them to another person unless they were true.

In an intercepted call on July 1, 2013 between Lightbody and a friend, Michael Galli, Govt. Ex. 128A, Lightbody confirms against his penal and ultimate pecuniary interests that he is still getting monthly payments on the option agreement with Wynn:

> MG: And congratulations by the way I've been rooting for you ever since our conversation, so I saw you got a positive vote so I'd just like to congratulate.
>
> CL: Oh yeah!
>
> MG: **Hey, I like the fact that the monthly check keeps coming regardless of what's happening.**
>
> [Laughter]
>
> CL: **That's what I said,. I told my partner, I go listen, let's look at at this way, if we get to February, March, it's another eight-hundred thousand so**…
>
> MG: Yeah who gives a shit.
>
> CL: Yup.

In an intercepted call on July 9, 2013, Govt. Ex. 132A, around the same time Lightbody and his co-defendants are to be interviewed by IEB officials and planning to conceal the true ownership of the land, Lightbody tells another friend, Joseph Kehoe, that he is still getting monthly payments:

> JK: Well you know what I was actually I said oh you must have sealed the deal. Now he doesn't know me anymore. You don't want to know me.
>
> CL: Seal the deal? What getting a laid?
>
> JK: No the fucking the casino. The casino.

11

CL: No that's not until February or March brother next year.

JK: I gotta suffer until then?

CL: Yeah.

JK: What the fuck.

CL: **But hey I'm not suffering I'm picking up a hundred a month I'm happy**.

This statement also is against Lightbody's penal and pecuniary interests because it shows that, contrary to what he and his co-defendants are telling IEB investigators, Lightbody is still in on the deal.

All of the above-mentioned statements by Lightbody were also made to friends or associates which provides additional corroborating evidence that Lightbody was being truthful in revealing these statements implicating him which were potentially harmful to his interests.

## IV. CONCLUSION

For the foregoing additional reasons, the Court should admit the Lightbody statements against all the defendants.

Respectfully submitted

CARMEN M. ORTIZ
United States Attorney

Date: March 22, 2016

By: */s/ S. Theodore Merritt*
KRISTINA E. BARCLAY
S. THEODORE MERRITT
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: March 22, 2016

*/s/ S. Theodore Merritt*
Assistant United States Attorney