UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| (1) DUSTIN J. DENUNZIO, | )   Criminal No:  14-CR-10284-NMG |
| (2) ANTHONY GATTINERI, and | ) |
| (3) CHARLES A. LIGHTBODY, | )   ORAL ARGUMENT REQUESTED |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S
MOTION TO STRIKE PARAGRAPH 45 FROM INDICTMENT**

The charge in this case is that Defendants conspired to defraud Wynn Resorts Limited of money by concealing the "financial interest" of Defendant Charles Lightbody, whom the Government describes as a "known associate" of the New England Family of La Cosa Nosta,[1] in FBT Everett Realty, LLC, which owned the land in Everett, Massachusetts that Wynn desired to purchase and develop into a destination resort casino.  To bolster its conspiracy theory, the Government has alleged in Paragraph 45 of the Indictment that Defendant Anthony Gattineri deleted seven full months' worth of emails — from arguably the most relevant time period in this case — from his Yahoo! email account in order to cover-up the alleged conspiracy.  The Government has since admitted that this statement is entirely false.

The Government now seeks to redact Paragraph 45 of the Indictment.  The Government's reasoning for this late-stage motion is obvious: it does not want the jury to know that it presented to the grand jury, and then included in the Indictment, a severely inculpatory overt act allegation

---

[1] In recent filings, the Government has effectively conceded that it has no valid evidentiary basis for its inflammatory allegation that Mr. Lightbody, who has never been convicted or even charged with a mafia-related crime, is an "associate" of the LCN.  Defendants intend to address this issue further prior to trial.

the it now knows, and always should have known, is 100% inaccurate: that, save for six "spam" emails, Mr. Gattineri deleted every single email he sent or received between July 1, 2012 and February 1, 2013.

In its moving papers, the Government states that, contrary to Paragraph 45's allegation, Mr. Gattineri's email account in fact contains "more than six emails" emails in the date range July 1, 2012 and February 1, 2013. The truth is that Mr. Gattineri's email account contains **over 6,000** sent and received emails during that date range, or 100% of the emails that Mr. Gattineri sent and received during that date range. A desire to whitewash this massive, inexplicable error in the prosecution team's investigation and evidentiary presentation to the grand jury is not a legally permissible basis to redact Paragraph 45 over Defendants' opposition: Federal Rule of Criminal Procedure 7(d) makes clear that a district court may strike "surplusage" from an indictment only "[u]pon the defendant's motion." Nor, as also explained below, is it a justification for concealing the investigatory team's extreme error from the jury.

For the reasons set forth below, Mr. Gattineri requests that this Court deny the Government's motion to strike Paragraph 45 of the Indictment, and permit the Defendants to present evidence of the Government's error in their defense.

## RELEVANT BACKGROUND

On October 1, 2014, the Defendants were indicted by a federal grand jury and charged with one count of conspiracy to commit wire fraud and one count of wire fraud, with each count premised on the allegation that Defendant Charles Lightbody in fact "retained a financial interest in the Everett Parcel" and/or "in FBT," which the Defendants "conceal[ed] from Wynn and the [Gaming Commission], in order to obtain money from Wynn for the Everett Parcel."

2

Indictment, ¶¶ 15-17, 19; *see also id.* at ¶ 46 (incorporating the conspiracy allegations into the wire fraud count).

On Friday, February 26, 2016, Assistant United States Attorney Kristina Barclay informed defense counsel what they already knew – that the statement contained in Paragraph 45 of the Indictment, alleging that Mr. Gattineri deleted emails, was an entirely false statement. She further indicated that the Government intended to redact the Indictment to remove paragraph 45. Ms. Barclay explained that, although the Government had in fact received the allegedly deleted emails from Yahoo! in response to a Government subpoena, it was unable to open them due to a "software issue." Apparently, the Government did not contact Yahoo! to determine the accuracy of Paragraph 45 before including it in the Indictment, nor did it consider that the missing emails might have been the result of something other than the sinister motivations of a Defendant they had already determined was guilty.

The Government now moves to strike paragraph 45 of the indictment.

**ARGUMENT**

**A. The Government Should be Precluded From Striking Paragraph 45 of the Indictment**

    1. <u>The Federal Rules of Criminal Procedure Do Not Allow a District Court to Strike a Portion of an Indictment Over the Defendants' Objection.</u>

Federal Rule of Criminal Procedure 7(d) conclusively resolves the Government's motion to strike Paragraph 45: Rule 7(d) makes clear that "surplusage" in an indictment may be struck only "[u]pon the defendant's motion." Rule 7(d) does not make an exception for portions of an indictment that could be struck without necessarily triggering a violation of the Constitution's Presentment Clause.

The Government ignores the plain language of Rule 7(d) and, instead, invokes a series of cases that are wholly inapposite. Several of the cases the Government cites involved a motion by *the defendant* to strike the surplusage. *See, e.g.*, *Salinger v. United States*, 272 U.S. 542, 548-49 (1926). And the balance involve appellate review of whether the district court's striking of surplusage, even if procedural error, constituted automatically reversible constitutional error. The Government does not cite a *single* case standing for the proposition that a district court may, despite the plain language of Rule 7(d), strike a portion of the indictment over the defendant's objection.

    2.   The Federal Rules Do Not Allow for Striking of Material Allegations

Even assuming, *arguendo,* that Rule 7(d) allowed for striking part of an indictment over a defendant's objection, the proposed striking of Paragraph 45 is still improper, because Paragraph 45 far exceeds "mere surplusage." "Mere surplusage" is defined as "redundant words in a statute or legal instrument; language that does not add meaning" or "extraneous matter in a pleading." *See* BLACK'S LAW DICTIONARY, (10th ed. 2014). Here, the government seeks not to strike extraneous matters, but the most nefarious, patently criminal conduct attributed to Mr. Gattineri in the entire indictment.

The Third Circuit has held that, "[w]hen an indictment is filed with the court, no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without a re-submission of the case to the grand jury. It is also settled that although the court may deem the change immaterial, as striking out of surplus words, it makes no difference. Where it amounts to a substantive change, the instrument, as thus changed, is no longer the indictment of the grand jury which presented it." *United States v. Krepper*, 159 F.2d 958, 970 (3d. Cir. 1946). The Seventh Circuit similarly held that "material amendments of an indictment can be

1:14-cr-10284-NMG

made only by the grand jury," but allows for an alteration by the Court where the "change in the indictment is one of form only." *United States v. McNeese*, 901 F.2d 585 (7th Cir. 1990) (citing *United States v. Field*, 875 F.2d 130, 133 (7th Cir. 1989) and *United States v. Sazenski*, 833 F.2d 741, 743-44 (8th Cir. 1987), cert. denied, 485 U.S. 908, 99 L. Ed. 2d 242, 108 S. Ct. 1083 (1988)).

### B. Defendants Should Be Permitted to Introduce Evidence That the Government's Flawed Investigatory Procedures Caused It to Advance Verifiably False Allegations of Criminal, Obstructive Conduct.

Even if this court were to allow the Government to strike Paragraph 45 of the Indictment, it should not preclude the Defendants from introducing evidence that the Government's incomplete, inadequate, insufficient, and remarkably flawed investigatory procedures caused it to advance to the grand jury and include in the Indictment verifiably false allegations of criminal, obstructive conduct by Mr. Gattineri.

The Defendants are entitled to explore both the credibility of the Government's investigation and the bias of its witnesses. It is well recognized that defendants may, as part of their defense strategy, discredit the quality, thoroughness, or reliability of the Government's investigation of their alleged criminal actions. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (stating that "indications of conscientious police work will enhance probative force and slovenly work will diminish it"), *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial of defendant in state court because withheld *Brady* evidence "carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case"), *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) (finding a *Brady* violation where withheld evidence may raise "serious questions about the manner, quality, and thoroughness of [an] investigation . . . A common trial tactic of defense lawyers is to discredit the caliber of the

investigation or the decision to charge the defendant"). Suppression of evidence of sloppy, negligent, or reckless police investigations precludes a defendant of the ability to craft a forceful defense. *See Kyles*, 514 U.S. at 446-447 (finding a *Brady* violation where "by demonstrating the detectives' knowledge of [the defendant's] affirmatively self-incriminating statements, the defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence").

To preclude a defendant from questioning the motive or bias of a Government witness – including motive or bias arising from or evidenced by a careless police investigation – is a violation of the defendant's right to cross examination. *See Alvarez v. Ercole*, 763 F.3d 223, 234 (2nd Cir. 2014) (affirming grant of habeus relief, finding a violation of the defendant's Sixth Amendment rights, and stating "whether the jury would ultimately have agreed that the police investigation was so wanting as to raise a reasonable doubt about [the defendant's] guilt is not for us to decide. It is sufficient that the jury might well have reached that conclusion").

Evidence of the lack of integrity of an investigation is in and of itself exculpatory. Here, the inadequacies and shortcomings of the Government's investigation are central to the Defendants' defense and their ability to cross examine the case agent witnesses. The magnitude of the Government's error cannot be overstated as the allegations in the paragraph sought to be struck would, if true, support a self-standing criminal charge of obstruction of justice. In seeking to undermine the credibility of the Government's investigation, the Defendant's must be able to review the manner and competence with which the investigators handled electronic evidence. This is particularly true here because the false allegation against Mr. Gattineri is part of a troubling pattern: the Government also previously advised the defense in its Rule 404(b) notice that it intended to prove up a similar email deletion allegation against Mr. DeNunzio, but the

Government just this morning told the defense that it is no longer going to pursue that allegation, presumably because it has realized that it too is without factual foundation.

As to bias, it is the extreme nature of the prosecution team's error, and the remarkable fact that they did not recognize it until last month, that is so telling. In the grand jury, the Government's lead case agent, Matthew Elio, agreed that something "seemed a little bit out of place, so to speak," with respect to Mr. Gattineri's email account. *See* Exh. A (grand jury testimony of Special Agent Elio regarding Mr. Gattineri's email account). He earlier testified that "emails . . . appeared to be missing" from Mr. Gattineri's account. *See* Exh. B (grand jury testimony of Special Agent Elio regarding Mr. Gattineri's email account). But rather than conclude that the discrepancy might be the result of the prosecution team's own error, the investigators leaped to the false conclusion that the error was the result of Mr. Gattineri's wholesale intentional destruction of seven full months' worth of emails. In July 2015, defense counsel for Mr. DeNunzio provided information to the prosecutors suggesting that Paragraph 45's email deletion allegation was faulty; in response, the prosecution team simply doubled down on the allegation without conducting any further inquiry into the veracity of the allegation contained in Paragraph 45. *See* Exh. C (correspondence between defense counsel and the prosecutors); Exh. D (FBI 302 regarding defense counsel's communication). The jury certainly would be entitled to conclude that the investigators, both in originally leaping to the conclusion that Mr. Gattineri deleted all of his emails and then failing to detect their error even after defense counsel's notification, are symptomatic of the fact that they are biased, seeing every piece of circumstantial evidence through the cloudy lens of an assumption of guilt and assuming inculpatory explanations and sinister actions when something seems amiss.

The Government's decision not to pursue the factually false Paragraph 45 does not disinfect the investigators of this bias, nor does it render their bias irrelevant. The Government already has advised the Court that it intends to call at least one, and possibly several, federal law enforcement witnesses to the stand. Within the limits of the hearsay rules and First Circuit law regarding "overview" witnesses, these law enforcement agents will be asked to testify about "evidence" and "facts" they learned during their investigation. The jury is not required to blindly accept the accuracy of this testimony, and the defense is entitled to inform the jury that these very same law enforcement witnesses have jumped to erroneous conclusions of "fact" before in this case. The defense certainly is entitled to explore the investigators' bias on cross-examination, as a means of piercing the investigators' credibility; and the jury is certainly entitled to consider that bias in assessing the credibility of their testimony.

The defense does not intend to raise the Paragraph 45 error in order to "embarrass" the prosecutors or its law enforcement witnesses. Rather, the defense intends to use the Paragraph 45 error, and the bias that it evinces, in order to pierce the credibility of the Government's law enforcement witnesses, each of whom bears responsibility for the error. Moreover, this is not about a claim that the FBI agents investigating this case did not follow up on additional leads. Rather, the point is that the entire prosecution team, including the FBI agents, leaped to the false conclusion that Mr. Gattineri committed a highly inculpatory document destruction based on a "fact" (a complete absence of emails from a seven-month time period) that an unbiased law enforcement agent would have rapidly realized was the result of an investigatory flaw. To deny Defendants the ability to explore the Paragraph 45 issue when cross examining the prosecution's law enforcement witnesses would be a violation of the Confrontation Clause.

## CONCLUSION

For the reasons stated above, the Government's Motion should be denied.

                                                  Respectfully submitted,

/s/ Joshua S. Levy
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Alexandra L. Roth (BBO # 687847)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Fax: (603) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com
Alexandra.Roth@ropesgray.com
*Attorneys for Dustin DeNunzio*

/s/ Rhiannon A. Campbell
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Rhiannon Campbell (BBO #682193)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com
rcampbell@hinckleyallen.com
*Attorneys for Anthony Gattineri*

/s/ Charles W. Rankin
Charles W. Rankin (BBO #411780)
Rankin & Sultan
151 Merrimac St. #200
Boston, MA 02114
crankin@rankin-sultan.com
*Attorney for Charles Lightbody*

Dated: March 28, 2016

**CERTIFICATE OF SERVICE**

I, Joshua S. Levy, hereby certify that, on March 28, 2016, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

/s/ *Rhiannon A. Campbell*