# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **(1) DUSTIN J. DENUNZIO,** | ) |
| **(2) ANTHONY GATTINERI, and** | ) **Criminal No:  14-CR-10284-NMG** |
| **(3) CHARLES A. LIGHTBODY,** | ) |
| | ) **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## DEFENDANTS' MOTION FOR A
## MISTRIAL WITH PREJUDICE OR, IN THE ALTERNATIVE,
## TO STRIKE CERTAIN TESTIMONY GIVEN BY LIEUTENANT CONDON

Defendants Anthony Gattineri, Dustin DeNunzio and Charles Lightbody ("Defendants")
hereby move this Court to declare a mistrial, with prejudice, based on certain testimony elicited
by the Government from Lieutenant Condon of the Investigations and Enforcement Bureau of
the Massachusetts Gaming Commission (the "IEB") in front of the jury, through which the jury
likely was informed that Mr. Gattineri invoked his Fifth Amendment privilege against self-
incrimination before the Massachusetts Gaming Commission.  Given the Government's clear
violation of the rule laid down by the United States Supreme Court in Griffin v. State of
California,  380 U.S. 609 (1965), and its progeny, Mr. Gattineri requests that this Court declare a
mistrial, with prejudice.  In the alternative, Mr. Gattineri requests that Lieutenant Condon's
subject testimony be stricken in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2016, Lieutenant Condon of the IEB testified about his interview of Mr. Gattineri on July 10, 2013, an interview to which Mr. Gattineri voluntarily submitted and answered the questions posed to him.  Following that line of questioning, the Government, over Mr. Gattineri's objection, was permitted to ask Lieutenant Condon questions about a second interview that he tried to conduct of Mr. Gattineri, at which Mr. Gattineri did not agree to respond to the questioning but, rather, refused to answer the questions posed to him on advice of counsel and invoked his Fifth Amendment privilege of self-incrimination.  Assistant U.S. Attorney Kristina Barclay, through the line of questioning posed to Lieutenant Condon and the answers elicited from Lieutenant Condon, effectively informed the jury that Mr. Gattineri had invoked his Fifth Amendment privilege against self-incrimination.  The questioning proceeded as follows:

> Q.    You were asked several questions about whether
>       Mr. Gattineri voluntarily met with you on July 10, 2013.  Do you remember those
>       questions?
>
> A.    Yes.
>
> Q.    Did the Gaming Commission request that he meet again with investigators?
>
> A.    Yes.
>
> Q.    And did he –
>
> MR. CONNOLLY:  Objection.  Objection, your Honor.
>
> THE COURT:  I didn't hear the question.
>
> Q.    Did he meet with investigators again?
>
> MR. CONNOLLY:  Objection, your Honor, and if this is allowed, I think we should be heard at sidebar.
>
> THE COURT:  All right.

2

SIDE-BAR CONFERENCE:

MR. CONNOLLY:  I don't know exactly where Ms. Barclay is going but it sounds like she may be going to the point in time when Mr. Gattineri invoked privilege which would be highly improper to bring before the jury.

MS. BARCLAY:  Your Honor Mr. Connolly cross-examined Lieutenant Condon about whether he voluntarily met with him on July 10, 2013. I think I'm at least able to establish that he did not voluntarily meet with him after that not that he invoked his Fifth Amendment right.

THE COURT:  You can't ask him about that but you can ask him about whether he voluntarily met.

MS. BARCLAY:  May I ask, your Honor, that he just give me a "yes" or "no" answer to avoid any issues.

THE COURT:  Yes, yes.

MS. BARCLAY:  Thank you.

(End of sidebar conference.)

MS. BARCLAY:

Q.  Lieutenant Condon; the Gaming Commission did ask Mr. Gattineri to meet with investigators after July 10, 2013? Is that what you just said?

A. That's what you asked me, yes.

Q. And they did?

A. Yes.

Q.  And I'm looking for a "yes" or "no" answer here, Lieutenant Condon.  Did Mr. Gattineri voluntarily meet with investigators after July 10, 2013?

A.  Yes.

Q.  He met with investigators?

A.  Yes.

Q.  And did he provide information to investigators?

3

MR. LEVY:  Objection.

THE COURT:  Overruled.

A. No, he did not.

*See* Trial Transcript 8-195:1-8-196:9.

As is explained below, the Government's questioning of Lieutenant Condon -- which informed the jury that Mr. Gattineri had refused to cooperate with the IEB's investigation, when he did so pursuant to advice of counsel under the Fifth Amendment privilege against self-incrimination -- constitutes reversible error and, as such, the Court should grant a mistrial.  In the alternative, Mr. Gattineri requests that the Court strike Lieutenant Condon's subject testimony in its entirety.[1]

## ARGUMENT

The rule set down by the United States Supreme Court in Griffin v. State of California, 380 U.S. 609 (1965), which is commonly referred to as the "*Griffin* Rule," has become a bedrock of the criminal justice system.  In Griffin, the Supreme Court held it violative of a defendant's Fifth Amendment rights for a prosecutor to comment to the jury on a defendant's refusal to testify, or for the judge to instruct the jury that the defendant's silence is evidence of guilt.  308 U.S. at 615 (holding that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence.")  As the Supreme Court stated in Griffin, "What the jury may infer, given no

---

[1] In addition to effectively informing the jury that Mr. Gattineri invoked his Fifth Amendment privilege against self-incrimination, Lt. Condon's testimony that Mr. Gattineri **voluntarily** met with IEB investigators after July 10, 2013 is factually incorrect.  Mr. Gattineri was subpoenaed by the Massachusetts Gaming Commission to give a deposition.  Mr. Gattineri appeared by compulsion, not volition, and invoked his Fifth Amendment privilege against self-incrimination.  To cure this inaccurate testimony, counsel for the Defendants has proposed to the Government that the parties stipulate that the testimony of Lt. Condon on this topic was factually inaccurate and should be stricken.

help from the court, is one thing.  What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another").

In <u>United States v. Robert</u>, the First Circuit held that:

> It is axiomatic that the defendant's right against self-incrimination, as protected by the Fifth Amendment, forbids the prosecution from commenting on an accused's failure to take the stand and testify on his own behalf.

<u>United States v. Roberts</u>, 119 F.3d 1006, 1014 (1st Cir. 1997).  As such, the <u>Griffin</u> Rule "protects against comments, even unintentional ones, which invite the jury to draw adverse inferences about the defendant's choice not to testify." <u>Gomes v. Brady</u>, 564 F.3d 532, 537 (1st Cir. 2009), citing <u>United States v. Akinola</u>, 985 F.2d 1105, 1111 (1st Cir. 1994); <u>United States v. Mietus</u>, 237 F.3d 866, 871 (7th Cir. 2001).  In addition, a prosecutor's comments need not be direct; rather, the prosecutor may run afoul of the rule in <u>Griffin</u> through inferential commentary. <u>United States v. Hardy</u>, 37 F.3d 753, 757 (1st Cir. 1994).

The standard employed by the First Circuit in determining whether there has been a <u>Griffin</u> violation is "whether, in the circumstances of the particular case, the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>United States v. Akinola</u>, 985 F.2d 1105, 1111 (1st Cir. 1993), citing <u>United States v. Glantz</u>, 810 F.2d 316, 322 (1st Cir. 1987).

As the Supreme Court held in <u>Griffin</u>, a prosecutor's comment on the defendant's failure to testify in a federal trial constitutes reversible error.  <u>Griffin</u>, 380 U.S. at 612.

Here, the <u>Griffin</u> rule violation is undeniable.  Through her questioning of Detective Condon, the prosecutor informed the jury that Mr. Gattineri refused to testify or cooperate when he showed up for the second round of interviewing by Detective Condon.  The prosecutor is well-aware that Mr. Gattineri declined to answer questions from Gaming Commission

investigators based on advice of counsel under the Fifth Amendment.  Through her questioning, the prosecutor thus effectively informed the jury that Mr. Gattineri had invoked his Fifth Amendment privilege against self-incrimination.  The prosecutor's questioning "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."  Akinola, 985 F.2d at 1111.  Indeed, the only reason the Government elicited such testimony from Lieutenant Condon was to suggest to the jury that Mr. Gattineri's refusal to cooperate and testify was evidence of guilt -- the very situation that the *Griffin* rule is designed to protect.

For all of the forgoing reasons, the Defendants respectfully request that this Court declare a mistrial with prejudice or, in the alternative, strike Lieutenant Condon's subject testimony in its entirety.

Respectfully submitted,

/s/ Laura B. Angelini
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com
*Attorneys for Anthony Gattineri*

/s/ Joshua S. Levy
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Alexandra L. Roth (BBO # 687847)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199

6

Phone: (617) 951-7000
Fax: (617) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com
Alexandra.Roth@ropesgray.com
*Attorneys for Dustin DeNunzio*

/s/ Charles W. Rankin
Charles W. Rankin (BBO #411780)
Rankin & Sultan
151 Merrimac St. #200
Boston, MA 02114
crankin@rankin-sultan.com
*Attorney for Charles Lightbody*

Dated: April 22, 2016

### CERTIFICATE OF SERVICE

I, Laura B. Angelini, hereby certify that, on April 22, 2016, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

/s/ *Laura B. Angelini*

7

55706440 v1