UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

No. 14-CR-10284-NMG

UNITED STATES

v.

CHARLES LIGHTBODY
Defendant

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR ENTRY OF JUDGMENT OF ACQUITTAL ON COUNTS 1 AND 2**

**INTRODUCTION**

Charles Lightbody ("Lightbody"), defendant in the above-captioned criminal case, has moved that the Court enter a judgment of acquittal on Counts 1 and 2 at the close of the Government's case. The defendants were indicted of conspiracy to commit wire fraud (Count 1) and wire fraud (Count 2). Specifically, on Count 1, the indictment charges:

> Beginning in or about December 2012, and continuing through in or about July 2013, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, the defendants, (1) Dustin J. DeNunzio, (2) Anthony Gattineri, and (3) Charles A. Lightbody, the defendants herein, did unlawfully and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to commit an offense against the United States, wire fraud in violation of 18. U.S.C. § 1343, to wit: having devised and intending to devise a scheme or artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice and attempting to do so.

1

> It was the purpose and objective of the conspiracy to enrich its members by concealing from Wynn and the MGC the financial interests of Lightbody, a convicted felon and known associate of the New England Family of La Cosa Nostra (the "NELCM"), in the Everett Parcel and to obtain money from Wynn in exchange for the Everett Parcel on the basis of false representations and concealment of material facts concerning the financial interest in the Everett Parcel.

Indictment, ¶¶ 14-15.

On Count 2, the indictment charges:

> On or about January 17, 2013, within the District of Massachusetts and elsewhere, (1) Dustin J. DeNunzio, (2) Anthony Gattineri, and (3) Charles A. Lightbody, the defendants herein, each aiding and abetting the other, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, and attempting to do so, to wit: DeNunzio sent an email to the Wynn General Counsel with the subject "Equity holders in FBT - Everett, MA," in which DeNunzio stated, "Per our conversation, below are the people who have interest in FBT Everett Realty LLC," identifying only DeNunzio, Gattineri and an individual known to the grand jury.

Indictment ¶ 47.

The Government has failed to adduce sufficient evidence to establish beyond a reasonable doubt each essential element of the charged offenses. First, there is insufficient evidence from which any rational jury could plausibly conclude that the information that Lightbody was a member of or had a financial interest in FBT was material to Wynn Resorts Ltd. ("Wynn") and the Massachusetts Gaming Commission ("MGC"). Second, the Government has not proven that Lightbody possessed the requisite intent to defraud Wynn of money or property. Accordingly, Lightbody is entitled to entry of a judgement of acquittal on Counts 1 and 2. Third, the Government has not proven that Lightbody (or Gattineri for that matter) knew that DeNunzio

sent the January 17, 2013 email, encouraged him to send the email, or planned to send the email that is the basis for Count 2.

## ARGUMENT

I. **THE GOVERNMENT HAS NOT PROVEN THAT THE INFORMATION THAT LIGHTBODY WAS STILL AN EQUITY HOLDER WAS MATERIAL TO WYNN OR THE MGC SO LIGHTBODY IS ENTITLED TO ENTRY OF A JUDGMENT OF ACQUITTAL ON COUNT 1 AND 2.**

**A. Summary of the Law.**

Under Federal Rule of Criminal Procedure 29, the Court, upon motion at the close of the government's case, must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction. The standard to be applied by the Court is whether "the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational factfinder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense." *United State v. Pimental*, 380 F.3d 575, 583 (1st Cir. 2004) (internal citation omitted); *United States v. Upton*, 352 F.Supp.2d 92, 95 (D. Mass. 2005).

"The elements of a wire fraud conviction under 18 U.S.C. § 1343 are: (1) a scheme or artifice to defraud using false or fraudulent pretenses; (2) the defendant's knowing and willing participation in the scheme or artifice with the intent to defraud; and (3) the use of the interstate wires in furtherance of the scheme." *United States v. Appolon*, 715 F.3d 362, 367 (1st Cir. 2013). The scheme or misrepresentation must be material. *Neder v. United States*, 527 U.S. 1, 25 (1999). "A material statement has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *Appolon*, 715 F.3d at 368

3

(internal citations and quotations omitted). In *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007), the Second Circuit made clear that not every misrepresentation is "material" and that there is "a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid -- which do not violate the mail or wire fraud statutes -- and schemes that depend for their completion on a misrepresentation of an essential element of the bargain -- which do violate the mail and wire fraud statutes." See also *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970) (misrepresentation must be "directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain"). In *Appolon*, the defendants had applied for mortgages and made several misrepresentations of fact on their application forms. *Appolon*, 715 F.3d at 366. The First Circuit held that the fact that the loan application form explicitly sought this information from the applicant indicated that the responses were capable of influencing its decision and was therefore material. *Id.*, at 368. Conversely, when information is not sought by the victim of a misrepresentation, it can be indicative of immateriality.

Importantly, materiality must be assessed at the time the false statement is made. *United States v. McKenna*, 327 F.3d 830, 839 (9th Cir. 2003) (internal citations and quotations omitted) (defendants were charged with perjury, the court held that "materiality is tested at the time the alleged false statement was made"). Hindsight may not be used to decide whether a false statement or misrepresentation was material at the time it was made.

### B. Application of Law to Facts.

The Government has not proven that before July 31, 2013, information about the ownership of FBT was capable of influencing Wynn's decision whether to enter into or terminate the Option Agreement signed with FBT on December 19, 2012. In fact, the evidence presented to

4

the jury made clear that FBT's ownership was not material to Wynn at the time it filed its application for a gaming license on January 14, 2013. Wynn did not bother asking who the owners of FBT were until January 16, 2013, only after persistent media inquiries about Gary DeCicco's interest in FBT. Indeed, Kim Sinatra testified that she asked DeNunzio to email her the names of FBT's owners "to put to rest" the media inquiries which, she believed, were fueled by their competitors. (Tr. 5-28:23). Forwarding these names to Wynn's compliance officer, Kevin Tourek, she asked "should we do backgrounds on these guys?" noting that none would have an interest going forward but that Wynn's competitor had "tried to make an issue of a criminal background of a guy who was in the deal in the past and is no longer in it." Ex. 312. Wynn's general counsel herself did not believe that backgrounds on the owners were necessary on January 17, 2013. It seems clear therefore that the defendants' alleged misrepresentation about the identity of FBT's members did not pertain to "an essential element of the bargain" without which Wynn would not have entered into the Option Agreement or would have terminated it. *Shellef*, 507 F.3d at 108.

In fact, neither Wynn nor FBT had any reason to believe that information was material: FBT was not a qualifier under the Massachusetts Gaming Act ("Gaming Act"). None of the MGC witnesses testified that FBT and its members were qualifiers under the Massachusetts and the MGC decision on Wynn's suitability clearly did not include FBT or its members on the list of qualifiers. Ex. 58. Karen Wells and Gayle Cameron testified that nothing in the Gaming Act prohibits someone with a criminal conviction from receiving the proceeds of a sale to a casino company. (Tr. 3-199:1-16 and 4-104:23-25 and 4-105:1-5). The MGC Investigations and Enforcement Bureau ("IEB") became concerned about Lightbody's possible interest in FBT in July of 2013. Gayle Cameron explained that the MGC's concern was based on a catch all clause

at the "very beginning of the law which talks about the public confidence in the integrity of the licensing process." (Tr. 4-105:7-9).

The identity of the owners became relevant to Wynn when the IEB interviewed them on July 31, 2013 and expressed its concern about Lightbody's ownership. It was only then, on August 1, 2013, that Wynn sent a letter to DeNunzio asking for a history of the ownership of the parcel since FBT acquired it in 2009. Ex. 47. Kim Sinatra testified that "what I'm generally governed by is what the regulator cares about. If they care about it, I care about it, regardless of what the law says." (Tr. 5-3:10-13).

Clause 13.13.1 of the Option Agreement in and of itself does not provide any indication that the identity of the owners was material information to Wynn in December 2012. The clause provides that Wynn could terminate the Option Agreement if it determined that FBT or any person associated with FBT engaged in activities that could adversely affect Wynn's gaming license, and that Wynn's objection was not capable of being cured within 5 days. Ex. 39. Absent contemporaneous evidence suggesting that Wynn considered the identity of FBT's members susceptible of adversely affecting its license, the broad and vague language of the clause 13.13.1 is not probative of materiality.

II. **THE GOVERNMENT HAS NOT PROVEN THAT LIGHTBODY INTENDED TO DEFRAUD WYNN SO LIGHTBODY IS ENTITLED TO ENTRY OF A JUDGMENT OF ACQUITTAL ON COUNT 1 AND 2.**

A. **Summary of the Law.**

In order to find a scheme to defraud the jury must determine that the defendant attempted to "wrong[ ] one in his property rights by dishonest methods or schemes." *United States v. Pimental*, 380 F.3d 575, 585 (1st Cir. 2004) (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). In *United States v. Christopher*, 142 F.3d 46, 54-55 (1st Cir. 1998), the First Circuit

6

approved jury instructions which explained that a scheme to defraud must be "done for the purpose of depriving a person or corporation of some possession, right, or interest". The Government must also prove that the material misrepresentations were knowingly made by the defendants. *United States. v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003).

A conviction for conspiracy requires the Government to show that the defendants "intended to make the agreement as well as intended to commit the substantive offense." *Appolon*, 715 F.3d at 370 (internal citation omitted). Similarly, to convict the defendants of aiding and abetting wire fraud, the Government must show that the defendants shared an intent to defraud. *United States v. Urciuoli*, 513 F.3d 290, 300 (1st Cir. 2008) (internal citations, quotations and footnote omitted) ("The government could not simply show that defendants participated in a transaction that turned out to be part of a fraudulent scheme. The government also had to show defendants' willful participation in the scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved."). Accordingly, if the Government fails to prove that the defendants intended to commit wire fraud, there can be no conviction for conspiracy to commit or aiding and abetting wire fraud.

### B. Application of Law to Facts.

The Government has not adduced any evidence that the defendants knew the alleged undisclosed information about Lightbody's financial interest was material to Wynn or the MGC. For the reasons stated above, not only was the ownership of FBT not material information before July 2013, there is no evidence that Lightbody believed or knew that FBT's ownership was material information to Wynn because FBT was not a qualifier. Trip McCoy, gaming consultant hired by FBT, testified that he had advised FBT to sell the Everett Parcel to a casino operator without keeping an interest in the casino to avoid being subject to an intrusive licensing

7

investigation. (Tr. 3- 44:2-8). The Gaming Statute gave no indication that the seller of the land was a qualifier. (Tr. 3- 199:1-16 and 4- 104:23-25 and 4-105:1-5).

The Government's theory of materiality is premised upon the defendants' knowledge that Lightbody was a convicted felon *and* a "known associate of the New England Family of La Cosa Nostra." Indictment ¶15. The Government has not adduced any evidence that DeNunzio and Gattineri were aware of Lightbody's alleged association with organized crime. Absent evidence of such knowledge, the Government cannot prove that all three defendants' "willful participation in the scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved." *Urciuoli*, 513 F.3d at 300 (internal citations and quotations omitted). The defendants must know that the misrepresentation is material to the victim. *Daniel*, 329 F.3d at 487. In the absence of such knowledge, defendant is entitled to judgment in his favor on the theory that they concealed his interest to hide the "fact" that he was a known associate of organized crime.

Even assuming the existence of a scheme to hide Lightbody's interest in the Everett Parcel, the Government did not prove that the defendants intended to deprive Wynn of money or property, as required by 18 U.S.C. § 1343. To the contrary, the defendants' and Wynn's property interests were always aligned. There is no evidence that Wynn would have backed out of the sale or renegotiated the purchase price had Lightbody's interest been disclosed to Wynn before July 2013. Indeed, ownership interests in FBT were totally irrelevant to Wynn when it decided to go forward with the Option Agreement on December 19, 2012 and when it filed its application for a license on January 14, 2013. Sinatra's testimony made clear that the only reason she asked who the owners were on January 16, 2013 was to "put to rest" media inquiries – and not because Wynn considered the identities of FBT owners material information. This is why Wynn did not

investigate Gary DeCicco, ask for proof of his buyout or ask to see FBT's operating agreement. If FBT's ownership ever became material to Wynn, it was when Wynn's officials were interviewed by the IEB on July 31, 2013. The Indictment identifies no overt act by Lightbody after July 11, 2013.

### III. THE GOVERNMENT HAS NOT PROVEN THAT LIGHTBODY KNEW THAT DENUNZIO SENT THE JANUARY 17, 2013 EMAIL TO WYNN, AND THEREFOR THE COURT MUST GRANT A JUDGMENT OF AQUITTAL ON COUNT 2.

There is no evidence that Lightbody (or Gattineri) knew that DeNunzio sent the email forming the basis of Count 2 to Wynn. Exhibit 46 is the January 17, 2013 email to Kim Sinatra. Nor is there any evidence that Lightbody (or Gattineri) encouraged him to do so. In the absence of any such evidence, there is no way for the jury to find Lightbody guilty beyond a reasonable doubt, even when the evidence is viewed in the light most favorable to the Government. Thus, a judgment of acquittal must enter under Rule 29.

### CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal on Counts 1 and 2.

Respectfully submitted

/s/Charles W. Rankin
Charles W. Rankin, BBO #411780
Rankin & Sultan
151 Merrimac Street, Second Floor
Boston, MA 02114
(617) 720-0011
**Counsel for Charles Lightbody**

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the Electronic Filing System (CM/ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on April 26, 2016.

/s/Charles W. Rankin
_____
Charles W. Rankin