**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) ) ) ) | |
| v. | ) ) | |
| **(1) DUSTIN DENUNZIO,** **(2) ANTHONY GATTINERI, and** **(3) CHARLES A. LIGHTBODY** | ) ) ) ) | Criminal No. 14-CR-10284-NMG |
| Defendants. | ) ) ) | |

**DEFENDANTS' SUPPLEMENTAL SUBMISSION**
**REGARDING THE "SCHEME TO DEFRAUD" INSTRUCTIONS**

Defendants respectfully submit this response to the Court's comments at the charge conference regarding the description of the "scheme to defraud" and the definition of the term "defraud."

**I.    Description of the Charged "Scheme to Defraud"**

The jury instructions must make clear to the jury that it may convict Defendants only if it finds that Defendants engaged or conspired to engage in a "scheme to defraud Wynn Resorts." An instruction that would permit the jury to convict Defendants of a "scheme to defraud the MGC" would be reversible error, because it would violate law that has been settled since the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 358-359 (1987).

In *McNally*, the Supreme Court stated that "the words 'to defraud' commonly refer to '**wronging one in his property rights** by dishonest means or schemes,' and 'usually signify the **deprivation of something of value** by trick, deceit, chicane or overreaching.'" 483 U.S. at 359 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)) (bolding added). The

Supreme Court explained that the mail and wire fraud statutes have their "origin[s] in the desire to protect **individual property rights**, and any benefit which the Government derives from the statute must be limited to the Government's **interests as property holder**." *Id.* at 358 n.8 (bolding added). The Supreme Court added that the mail and wire fraud statutes are "limited in scope to the **protection of property rights.**"[1] *Id.* at 360 (bolding added).

*McNally* is a decision of the Supreme Court, and so it is binding law in the First Circuit. *See United States v. Ochs*, 842 F.2d 515, 519 (1st Cir. 1988) ("[W]e are bound by *McNally* . . . ."). Thus, the First Circuit expressly has followed *McNally*'s definition of "defraud." In *United States v. Pimental*, for example, the First Circuit quoted *McNally* in holding that "[i]n order to find a 'scheme to defraud,'" the jury must "determine that [the defendant] was attempting to '**wrong[ ] one in his property rights** by dishonest methods or schemes.'" 380 F.3d 575, 584 (1st Cir. 2004) (quoting *McNally*, 483 U.S. at 358) (bolding added). In *United States v. Kenrick*, an en banc panel of the First Circuit explicitly recognized "*McNally*'s requirement that a scheme to defraud be directed as '**wronging one in his property rights** by dishonest methods or schemes.'" 221 F.3d 19, 29 (1st Cir. 2000) (en banc) (quoting *McNally*, 483 U.S. at 358) (bolding added).

Defendants literally could not have engaged in a "scheme to defraud the MGC," because the MGC had no "property rights," within the meaning of the federal wire fraud statute, that Defendants could "wrong." The Government has not argued that Defendants lied to the MGC in order to obtain money from the MGC, or in order to avoid paying money (such as a tax or a licensing fee) to the MGC. The MGC was in possession of the Region A casino license, but the

---

[1] After *McNally*, Congress created a single statutory exception to this rule: under 18 U.S.C. § 1346, the mail and wire fraud statutes also allow a prosecution for "honest services fraud," which is limited to "bribery and kickback schemes." *Skilling v. United States*, 561 U.S. 358, 412 (2010). This case obviously does not involve honest services fraud.

Supreme Court's decision in *Cleveland v. United States*, 531 U.S. 12, 25-26 (2000), makes clear that a gaming license in the hands of the MGC is not "money or property" for purposes of the mail and wire fraud statutes. Moreover, while the MGC has an intangible right to receive truthful information from individuals it speaks to as part of the casino licensing process, *Cleveland* also makes clear that this is not a "property right[ ]" cognizable under the mail and wire fraud statutes, which do not "arm federal prosecutors with power to police false statements in . . . submissions to state and local authorities." *Id.* at 26.

Between the MGC and Wynn Resorts, only Wynn Resorts had "property rights" that Defendants could "wrong" for purposes of the federal wire fraud statute. Thus, as *McNally*, *Cleveland*, and the First Circuit case law discussed above make clear, the jury instructions here must direct the jury that, to convict Defendants of engaging in or conspiring to engage in a cognizable wire fraud scheme, it must find that Defendants engaged or conspired to engage in a "scheme to defraud Wynn Resorts."

To be sure, the applicable wire fraud case law permits the Government to argue that deceiving the MGC was Defendants' chosen means of accomplishing a scheme to defraud Wynn Resorts.[2] *Cf. United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998) (holding that the entity the defendant "deceived" need not be "the same [entity] **deprived of the money or property** by the fraud" (bolding added)). That is altogether different, however, from a jury instruction defining the charged wire fraud scheme as including a "scheme to defraud the MGC." Any instruction that implies to the jury that a "scheme to defraud the MGC" is a cognizable wire fraud offense — such as an instruction defining the wire fraud charge as "a scheme to defraud

---

[2] Defendants have never argued otherwise. Rather, in prior briefings, Defendants merely have argued that, based on the specific facts of this case, a rational jury could not conclude that Defendants lied to the MGC in order to defraud Wynn Resorts.

3

Wynn Resorts or the MGC," or an instruction defining the wire fraud charge as "a scheme to defraud Wynn Resorts and the MGC" — would be reversible legal error, because a "scheme to defraud the MGC" is a legal nullity. The jury should be instructed that it may convict Defendants only if it finds a "scheme to defraud Wynn Resorts."

## II.     Definition of the Term "Defraud"

With respect to the definition of the term "defraud," Defendants respectfully submit that the Court should hew to the language in the *McNally* line of cases and *Christopher*, which speak of the fraud victim being "wronged in his property rights" and "deprived" of money, rather than following the First Circuit pattern instruction verbatim. *See Christopher*, 142 F.3d at 54 (using the term "deprived" to define "defraud"). The verbatim pattern instruction, which defines "defraud" as "to deceive another in order to obtain money or property," is ill-fitted to a scenario where the jury plausibly could find that the defendant deceived Party A in order to obtain money from Party B without any intent to **deprive** Party B of money. The pattern instruction could not plausibly have been drafted with such a scenario in mind.

For example, suppose the jury were to determine that Defendants lied to the MGC with the intention of helping Wynn Resorts receive the Region A casino license, knowing that Wynn Resorts would respond to the award of the license by consummating its option to buy the Everett Parcel from FBT Everett Realty LLC. It would be reversible error for the Court to issue a set of jury instructions permitting the jury to convict Defendants of wire fraud on the basis of such a determination, because the jury would not have determined that Defendants intended to **"wrong[ Wynn Resorts] in [its] property rights**." *Pimental*, 380 F.3d at 584 (quoting *McNally*, 483 U.S. at 358) (bolding added); *see also United States v. LaPlante*, 714 F.3d 641, 644 (1st Cir. 2013) (endorsing district court instruction defining "scheme to defraud" as "a plan to deprive

4

another of money or property by trick, deceit, deception or swindle"); *United States v. Sawyer*, 239 F.3d 31, 38 (1st Cir. 2001) ("The legislative history of [the mail fraud statute] suggests that Congress intended to shield people from 'schemes to deprive them of their money or property' in passing the statute." (citing *McNally*, 483 U.S. at 356)).

To the extent the Court chooses to follow verbatim the pattern instruction definition of "defraud," the Court can reduce the risk of juror confusion and improper conviction by avoiding any extraneous instructions suggesting that a scheme to defraud Wynn Resorts is established if the jury concludes merely that Defendants engaged in a scheme to deceive the MGC so that Wynn Resorts would receive the Region A casino license and consummate its option to purchase the Everett Parcel.  Indeed, a set of instructions that would allow the jury to convict Defendants on such a factual determination arguably would run afoul of the First Circuit's decision in *United States v. Sawyer*, that "[t]o establish mail [or wire] fraud . . . the alleged scheme must involve **deception in the deprivation of money [or] property** . . . ."  85 F.3d 713, 732 (1st Cir. 1996); *see id.* at 723 ("Traditionally, the mail fraud statute reached schemes that **deprived the fraud victim of property or some other item of economic value**").

Respectfully submitted,

/s/ Joshua S. Levy
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Alexandra L. Roth (BBO # 687847)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Fax: (617) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com
Alexandra.Roth@ropesgray.com
*Attorneys for Dustin DeNunzio*

/s/ Laura B. Angelini_____
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com
*Attorneys for Anthony Gattineri*

/s/ Charles W. Rankin_____
Charles W. Rankin (BBO #411780)
Rankin & Sultan
151 Merrimac St. #200
Boston, MA 02114
crankin@rankin-sultan.com
*Attorney for Charles Lightbody*

Dated: April 27, 2016

## CERTIFICATE OF SERVICE

I, Joshua S. Levy, hereby certify that, on April 27, 2016, true and accurate copies of the foregoing were served on counsel for the Government through ECF.

/s/ *Joshua S. Levy*_____

56453729_1